643 P.2d 1061

Gloria Jean GREENE,
Plaintiff-Respondent,

v.

John Burkland GREENE,
Defendant-Appellant.

No. 13778.

Supreme Court of Idaho.

March 17, 1982.

R. M. Turnbow and Richard A. Riley of Eberle, Berlin, Kading, Turnbow & Gillespie, Boise, for defendant-appellant.

Dean E. Miller of Gigray, Miller, Downen & Weston, Caldwell, for plaintiff-respondent.

BISTLINE, Justice.

No factual dispute was presented to the courts below. The parties were divorced in December of 1976 and the divorce decree provided that the husband would pay the wife $600 per month for two years. The wife remarried eight months later and so informed the husband, who thereupon ceased making payments. The wife through counsel made demands for payment, but the husband declined. Neither party at that time sought a judicial determination of whether the remarriage absolved the husband of any further obligation to pay. When the two year period for payment had elapsed, the wife instituted proceedings to collect alleged arrearages. The husband filed a counter motion seeking retroactive modification of the alimony provision so as to terminate his support obligation as of the time of the wife's remarriage. In the proceedings below, the wife neither claimed nor attempted to prove that following her remarriage she had needed the alimony payments for her support while relocating and acquiring further education—the declared purpose of the limited alimony award. The courts below applied the "vesting rule," however, and awarded the wife a monetary judgment in the amount of $9,600.

Appellant husband in this case relies upon *Despain v. Despain*, 78 Idaho 185, 300 P.2d 500 (1956) and *McHan v. McHan*, 59 Idaho 496, 84 P.2d 984 (1938), for the proposition that "the Court is required to recognize that the obligation to pay alimony ceases upon the alimony recipient's remarriage." Respondent wife argues that *Despain* and *McHan* left intact the "vesting rule"—that, as is the case with an ordinary change of circumstances, as distinguished from remar-

riage or death, a divorce decree cannot be modified retroactively as to installments which have accrued prior to a motion for modification. She argues that under *McHan* and *Despain* retroactive modification of a support order is permitted only if a spouse's remarriage is concealed. Thus, the sole issue presented on appeal is whether the *McHan-Despain* principle should be applied only in cases of concealment.

The decree of divorce in *Despain* was entered in Franklin County, Idaho, in May of 1944. The husband was ordered to pay the plaintiff wife the sum of $20.00 per month for the support of the plaintiff and a minor child. The wife married again a year later. After divorcing her second husband, she married yet another man to whom she was still married in 1954. At that time she brought action in California for an aggregate judgment in the amount of allegedly unpaid monthly support awards. The trial of that cause was recessed until the wife could gain an adjudication from the Idaho court as to the portions of the $20.00 monthly award attributable to the wife and to the child. The wife instituted appropriate proceedings, and the husband countered by moving to strike from the 1944 decree all provisions for alimony—as of the date of the wife's first remarriage.

The district court in *Despain* ruled that the wife's remarriage terminated her right to alimony. On appeal this Court agreed, holding:

"The remarriage of the plaintiff terminated her right to receive alimony from the defendant, *McHan v. McHan*, 59 Idaho 496, 84 P.2d 984. Following her remarriage, and effective upon that date, the decree imposed upon the defendant an obligation colorable only. The fact that the decree was avoided by facts subsequently developing should be made a matter of record." 78 Idaho at 190, 300 P.2d at 503.

In this case, both parties argue considerably about the meaning of certain language from one of the opinions which was filed in the *McHan* case. Little is said, however, about the *Despain* language that "following

her remarriage, and effective upon that date, the decree imposed upon the defendant an *obligation colorable only.*" 78 Idaho at 190, 300 P.2d at 503. (Emphasis added.) Even though the alimony provision of the decree which stands unmodified following a former spouse's remarriage looks no different on paper than it did the day before the remarriage, it is no longer actionable, but colorable only, *i.e.*, although it is ostensibly on its face valid, such is "in appearance only, and not in reality." *See* 15 C.J.S. 355 (1967); *Windle v. Flinn*, 196 Or. 654, 251 P.2d 136, 146 (1952). This is what we perceive to be the signal which the Court was sending in *Despain*, and our review of the *McHan* opinions convinces us that the *Despain* Court correctly applied the holding of *McHan*.

In a proposed majority opinion in the *McHan* case, Justice Budge posed the question which was before the Court as being "whether all unpaid installments of $35 per month accruing after the remarriage of the wife should be canceled, or, only those accruing subsequent to appellant's motion for modification, or the order of modification." 59 Idaho at 507, 84 P.2d at 988. He then proceeded to point out that there were two conflicting lines of authority on the issue:

"The authorities are not in harmony upon this proposition, some holding the decree not subject to modification as to sums already accrued before the application or order ... and there is respectable authority holding that all payments accruing after remarriage should be canceled, although application is not made until subsequent to the accrual thereof, for the reason that a wife by contracting a secret marriage could mulct her former husband of a large sum by reason of alimony while being supported by her second husband.... In *Linton v. Hall*, 86 Misc. 560, 149 N.Y.S. 385, cited on page 91, 30 A.L.R., it was held that on the remarriage of a divorced wife, the decree should be modified so as to allow the plaintiff alimony only up to the time that she remarried, and that if the defendant should be relieved from the payment of

alimony only from the time of the entry of the order annulling the provision, the defendant not having notice of his former wife's remarriage until many years thereafter, it would mean in effect that a woman, by contracting a secret marriage could mulct her former husband of a large sum by reason of alimony, while being supported by her second husband.

" 'The modification is not limited to the time subsequent to the application. It applies *nunc pro tunc* as to the time of the remarriage to all unpaid alimony. To hold otherwise would enable a woman to conceal her remarriage and thereby obtain alimony from her former husband while living with a new spouse.' " 59 Idaho at 507–08, 84 P.2d at 988 (citations omitted).

Justice Budge, having gone that far in laying out the two different lines, apparently concluded that it was not at that time necessary to cleave to one rule to the exclusion of the other. Rather, he found that a retroactive application in that "instant case" was justified because of the former wife's concealment of her remarriage:

"In the instant case however, the facts are such as disclose a right to cancellation of all sums accruing after the remarriage, regardless of what may be the rule in ordinary cases.... Under the circumstances it clearly appears that the delay in making the application for modification of the decree was through no fault of appellant but was due entirely to respondent's effort to keep her remarriage secret, which being true, we are of the opinion that all payments accruing subsequent to respondent's remarriage and remaining unpaid should be canceled upon

the ground of public policy." 59 Idaho at 508–09, 84 P.2d at 988.

Writing for a majority of the Court in *McHan*,[1] Justice Ailshie adopted the rule that alimony ceases upon the remarriage of the recipient spouse:

"Now, the thing has happened that was not contemplated by this contract, namely, the wife has remarried, and under what I believe to be the *better rule of law, the alimony ceased with the remarriage.*" 59 Idaho at 511, 84 P.2d at 990 (emphasis added).[2]

That rule was subsequently applied without qualification by the Court in *Despain*.

We are not asked by the respondent wife to overrule the *McHan-Despain* principle, but only to confine its application to cases in which a spouse conceals the remarriage. However, the rule has stood without challenge for over forty years. It is based on sound public policy, which appears to be more soundly entrenched now than it was at the time the *McHan* opinion was announced.

In 1973 Arizona statutory law was amended to provide:

"Unless otherwise agreed in writing or expressly provided in the decree, *the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance.*" (Emphasis added.) A.R.S. § 25–327(B).

Four years later, in *Fye v. Zigoures*,[3] 562 P.2d 1077 (Ariz.App.1977), the Arizona Supreme Court held that the husband who had in 1974 been ordered to pay alimony (as per a separation agreement) of $400 per month until a fixed sum of $28,000 had been paid, was entitled to be relieved of that obliga-

---

1. Although the opinion of Justice Budge appears before that of Justice Ailshie in the Pacific Reporter and in the Idaho Reports, and it was listed as the "Opinion of the Court" in the Idaho Report, it was not in fact the opinion of the Court. Rather, the opinion of Justice Ailshie in which Justice Givens and Chief Justice Holden concurred is the majority opinion in *McHan*.

2. In *McHan* Justice Ailshie noted that the parties had not contemplated that the wife might

remarry. Although in this case it is clear that the parties did contemplate that the wife might remarry, as witnessed by an insurance provision of their property settlement agreement, it seems rather apparent that a remarriage on her part within two years was not anticipated. However, it did so happen, else no controversy would have arisen.

3. Zigoures was appointed as the personal representative of the deceased wife.

tion because the recipient wife had died six weeks after the decree was entered. The holding of the Arizona court seems to be based upon the proposition that because the parties had not agreed in writing to extend the payments beyond the death of either party, the obligation was terminated by the death of the recipient spouse. In the same year, Colorado enacted a statute the same as Arizona's. *See* Colo.Rev.St. § 14–10–122(2).

Of perhaps more importance, California had much earlier, in 1933, enacted this amendment to its alimony statute:

"Upon the remarriage of the wife, the husband shall no longer be obligated to provide for her support but such remarriage shall not affect his duty to provide for the maintenance of the children of his marriage." 1933 Cal.Stat. ch. 412 § 1.

In 1951 the California statute was further amended to reflect that alimony might be awarded to either spouse, and also to modify the 1933 amendment so as to provide that support payments could under certain circumstances survive death or remarriage. Thus, the statute, which served as a pattern for the Colorado and Arizona statutes, provided:

"Except as otherwise agreed by the parties in writing, the obligation of any party in any decree, judgment or order for the support and maintenance of the other party shall terminate upon the death of the obligor or upon the remarriage of the other party." Cal.Civ.Code § 139 (Deering Supp. 1952). *See* 1951 Cal.Stat. ch. 1700 § 7.

Of interest in this case, other than the fact that of death or remarriage are circumstances which result in termination, is that the 1951 amendment also contained a statutory provision embodying the "vesting" rule:

"That portion of the decree or judgment making any such allowance or allowances, and the order or orders of the court to enforce the same may be modified or revoked at any time at the discretion of the court *except as to any amount that may have accrued prior to the order*

*of modification or revocation.*" Cal.Civ. Code § 139 (Deering Supp. 1952). *See* 1951 Cal.Stat. ch. 1700 § 7.

In 1933, when California statutorily provided for termination of alimony on remarriage the legislature was doing almost as the California courts had already done. This was recognized in *McClure v. McClure*, 4 Cal.2d 356, 49 P.2d 584 (1935), a case predating our *McHan* case by six years, and cited in Justice Budge's opinion. The *McClure* opinion cited, *inter alia*, two earlier California cases, *Cohen v. Cohen*, 150 Cal. 99, 88 P. 267 (1906), and *Atlass v. Atlass*, 112 Cal.App. 514, 297 P. 53 (1931), which in turn were cited by Justice Budge as

"respectable authority holding that all payments accruing after remarriage should be cancelled, although application is not made until subsequent to the accrual thereof . . . ." *McHan*, 59 Idaho at 507, 84 P.2d at 988.

These cases and others, including *Kirkbride v. Van Note*, 275 N.Y. 244, 9 N.E.2d 852 (Ct.App.1937), comprise the authorities stating "the better rule of law" which the Court through Justices Ailshie, Holden, and Givens adopted: "the alimony ceased with the remarriage," *McHan*, 59 Idaho at 511, 84 P.2d at 990, and again, "the liability for monthly payments for 'support' ceased on the wife's remarriage." *Id.* at 513, 84 P.2d at 991.

In the *Atlass* case, *supra*, which barely predated the California legislature's action by two years, and obviously invited it, the facts, as in this case, were not disputed. The sole issue was whether the alimony ceased as of the date of the remarriage. The California court saw the question as being one of jurisdiction in the power sense of that word:

"As will be seen, the main question presented is as to the power of a court to enforce or order payments for the support and maintenance of a divorced wife after her remarriage. The general principle is announced in California Jurisprudence, volume 1 at page 1039. There it is stated in substance: The duty of the divorced husband towards his former wife

is to support her while she remains single or until she dies, and, if she remarries again, or if she dies, that duty towards her will terminate. Good public policy would not compel a divorced husband to support his former wife after she has become another man's wife, except under extraordinary conditions, which she should be required to prove. The rule thus announced is amply supported by authority both in this state and in other jurisdictions throughout the United States. In the case of *Cohen v. Cohen*, 150 Cal. 99, 88 P. 267, 270, 11 Ann.Cas. 520, the rule is discussed at great length and many authorities cited in support thereof. The court, in that case, uses the following language: 'We believe that the cases wherein the alimony should be continued after the remarriage are extremely rare and exceptional, particularly where there are no children of the former marriage. Good public policy would not compel a divorced husband to support his former wife after she has become another man's wife, except under extraordinary conditions, which she should be required to prove. *Unless such conditions are shown by her to exist, the court should, on the former husband's motion, cancel all payments accruing after the remarriage*, in all cases where, as here, there are no children and the allowance is based solely upon the husband's probable earning capacity, or upon his breach of the marriage vows, and not upon existing property rights." 297 P. at 53–54.

In the earlier *Cohen* case, cited and relied upon in *Atlass*, the court cited *Southworth v. Southworth*, 168 Mass. 511, 47 N.E. 93 (1893), for the proposition "that *the fact of remarriage* gave the wife the right to claim support from another man, and throws upon her the burden of proving that such support is not adequate to her needs and *is prima facie sufficient cause to revise the judgment for alimony.*" 88 P. at 270 (emphasis added).

The California court was impressed with the reasoning of the Massachusetts court:

"We think this rule is just and equitable. The presumption would be that the second husband was able to fulfil his marriage covenant and support his wife according to her station in life. This is the ordinary and normal condition of married persons, and such ordinary condition is to be presumed until the contrary is shown." 88 P. at 270.

What comes out of the California history is that the 1933 legislature went beyond the court's holdings in *Atlass* and *Cohen* in making no provision for the extraordinary conditions for cases in which a former spouse upon remarriage could yet allege and attempt to prove her dependency upon continued alimony from her former husband. Although that is not a problem in this case, the wife having made no such contention, and having offered no proof in that vein, it cannot be ignored that the *McHan* court in adopting "the better rule" did in fact opt for the good public policy view of the 1933 California legislature which declared that remarriage terminated alimony as of the date of the remarriage.

The Supreme Court of Utah in *Austad v. Austad*, 2 Utah 2d 49, 269 P.2d 284 (Utah 1954) read California's 1933 amendment as stating that "where retroactive elimination of alimony was permitted [formerly by the courts] upon petition, by statute, petitioning is now unnecessary, and remarriage of the wife automatically terminates her right to alimony," citing the case of *Stucker v. Katz*, 92 Cal.App.2d 843, 207 P.2d 879 (1949). In *Stucker*, in answer to the question presented—whether the statute is self-executing—the court answered as follows: "It is couched in mandatory language, calls for no court action to make it effective and provides explicitly that the husband 'shall no longer be obligated' to provide support for a divorced wife after her remarriage." 207 P.2d at 879.

In *Austad* the Utah court overruled an earlier and long-standing rule announced in *Myers v. Myers*, 62 Utah 90, 218 P. 123 (1923), that remarriage did not automatically terminate alimony. In doing so the court made an exhaustive review of the proposition, following which it reasoned:

"One is hard pressed to find any rational basis to support the view that remarriage does not terminate the obligation of the former husband to pay alimony. . . .

. . . .

"During coverture the husband voluntarily, or as an obligation incidental to the marital status, provides for the wife's support, after divorce the alimony is provided as a social necessity as a substitute for such support. It seems quite incongruous that such substitute should continue after she has married to another, who has assumed such burden, and thus give the wife the double right to support by receiving it from two individuals.

"The foregoing reasoning has been accepted as persuasive whenever courts have given any consideration to the social and legal aspects of the problem, as is pretty well epitomized by the text writer in 17 Am.Jur. 475: ' * * * it is illogical and unreasonable that she (the wife) should have the equivalent of an obligation for support by way of alimony from a former husband, and an obligation from a present husband for an adequate support at the same time. It is her privilege to abandon the provision made by the decree of the court for her support under sanction of the law, for another provision for maintenance which she would obtain by a second marriage, and when she has done so the law will require her to abide by her election * * *.' That the judicial decisions adopt this view is illustrated by the statements from the Supreme Court of Oregon in the case of *Brandt v. Brandt*, supra, that after the wife had remarried, ' * * * there are no considerations of right or equity that would require him [the former husband] to again assume the obligation' of supporting his former wife; and as simply and aptly put in the case of *Sides v. Pittman*, supra, ' * * * it is contrary to the principles of justice to require a former husband to support the wife of a later husband.'

"From an examination of a great number of authorities on this subject it seems fair to state that the preponderance of them, particularly in the later cases, hold that alimony automatically terminates upon remarriage, contrary to the *Myers* case rule. And this seems to us to be the sounder view, not only upon the basis of the weight of authority, but upon the better reasoning." 269 P.2d at 288–89.

In addition to the California history, the *McHan* Court in adopting "the better rule" of the 1933 California legislature, undoubtedly was impressed with the similar reasoning of the then recent case of *Kirkbride v. Van Note*, 275 N.Y. 244, 9 N.E.2d 852 (Ct. App.1937). The facts in that case were not in dispute, and are readily gleaned from the opinion. Suffice it to say that the wife, who was awarded alimony, remarried the same year of the divorce, and the husband then ceased paying alimony. Ten years later, following his death, the wife prosecuted a claim for 119 months of alimony. The executor for the deceased husband sought cancellation by way of modification. The New York Court of Appeals, with only a single unopinioned dissent, reasoned and held as follows:

"Where a former wife has remarried and an application is made for modification of the judgment with respect to the direction of payment of money for the support of the former wife, the court 'must modify,' and cannot in its discretion refuse to do so. *Alimony is awarded for present maintenance, and 'as a matter of public policy a wife who has a husband with whom she is living should be supported by him and not by one from whom she has been divorced.' Schley v. Andrews, 225 N.Y. 110, 114, 121 N.E. 812, 813.* The law recognizes the unfairness of requiring a husband to pay alimony for a period during which his former wife is married to another. In view of the mandatory character of this provision and the public policy behind it, there can be no doubt that the right to apply for modification is not personal to the husband, and, if the husband should die before making such application, his representative, upon whom, under section 83 of the Civil Practice Act, the liability devolves, may apply for such modification. *The*

*modification is not limited to the time subsequent to the application. It applies nunc pro tunc as of the time of the remarriage to all unpaid alimony. To hold otherwise would enable a woman to conceal her remarriage and thereby obtain alimony from her former husband while she is living with a new spouse."* 9 N.E.2d at 854 (emphasis added).

Not asked to overrule *McHan* and *Despain*, we are not inclined to do so, and on the contrary, are of the view that sound public policy is served by adhering to it. Should the legislative sense be that provision be made for those rare cases involving extraordinary conditions, as discussed in *Cohen* and *Atlass*, then it may take appropriate action. Any misunderstanding of *McHan* and *Despain* should be, hopefully, clarified by this opinion. As suggested in *Despain*, good housekeeping would suggest that when a recipient of alimony remarries, an appropriate order recognizing that fact, and the cessation of the alimony obligation, should be entered.

The orders of the courts below are reversed, with directions to enter an appropriate order in accordance with the views herein expressed.

Costs to appellant.

BAKES, C. J., and McFADDEN, DONALDSON and SHEPARD, JJ., concur.