705 P.2d 1047

**Scott R. SIMPLOT,**
**Plaintiff-Respondent,**

v.

**Pamela H. SIMPLOT,**
**Defendant-Appellant.**

No. 15612.

Court of Appeals of Idaho.

June 4, 1985.

Rehearing Denied Sept. 19, 1985.

Petition for Review Denied
Nov. 20, 1985.

Louis Cosho of Clemons, Cosho & Humphrey, Boise, for defendant-appellant.

James P. Kaufman of Anderson, Kaufman, Ringert & Clark, Boise, for plaintiff-respondent.

Before HUNTLEY, Acting C.J., and BISTLINE and TOWLES, Acting JJ.

TOWLES, Acting Justice.

This is an appeal from an order of the district court terminating monthly alimony payments. We reverse.

The parties were married in 1966 and were divorced in 1981. Prior to the divorce, the parties, both represented throughout by counsel, negotiated for and then executed a "Child Custody and Property Settlement Agreement" which in ensuing court proceedings was approved by the court. Therein the husband agreed to pay the wife $2,000 a month in alimony for 121 months. The 121-month time frame was selected with regard for then current provisions of the Internal Revenue Service.

When the wife two years later remarried the husband moved to terminate his obligation to make the monthly alimony payments, relying on *Greene v. Greene*, 102 Idaho 891, 643 P.2d 1061 (1982). The magistrate's order terminated alimony as of the date of the remarriage. On appeal to the district court, the order was affirmed and this appeal followed.

The husband's position is that *Greene, supra*, requires as a matter of public policy that alimony terminates automatically upon the remarriage of the receiving spouse. The wife argues that *Greene* does not apply where the obligation to pay alimony arises, not from an order imposed by the court, but rather from a contract between the parties. We agree with the wife's contention; that is, the holding in *Greene* is not applicable to circumstances where the alimony obligation arises from contract. Thus, whether the obligation has terminated in the instant case is dependent upon a proper interpretation of the agreement. That being the case, it is not necessary for this Court to address the further issue raised by respondent as to the effect of merger of the agreement into the decree of divorce.

The pertinent provisions of § 15 of the Agreement, dealing with alimony, are these:

The parties agree to and recognize the Wife's need to acclimatize herself to single parenthood and financial autonomy gradually. With that purpose in mind, the Husband agrees to pay to the Wife as and for alimony the sum of $2,000.00 per month commencing April 1, 1981, and monthly thereafter for a total of 121 monthly payments of $2,000.00 each. Provided, however, in the event of the death of the Wife prior to payment of 121 monthly payments, the monthly payments shall cease and Husband shall not be obligated to make any further payments to the estate of the Wife. Provided further that the Wife shall have the right to decline all or any portion of the alimony payments. Husband and Wife agree that the payments to the Wife shall be taxable to the Wife as ordinary income and shall be fully deductible by the Husband. It is specifically understood and agreed that the payment of alimony is intended by the parties to qualify as a periodic payment of alimony as defined by Section 71 of the Internal Revenue Code.

At oral argument counsel were each asked to suggest a definition of financial autonomy. Both gave good responses, the more fully developed of which was as follows:

I'll answer that question first, Your Honor. May it please the Court and may it please Counsel, many times in a divorce situation—and I'm sure you've had friends and acquaintances where they have gotten a divorce. The wife is in a situation where she's not been working, not had a career. If she has the children she undergoes a tremendous change in her life. Sometimes she's forced to sell the home, sell the car, maybe forced into a quick marriage, simply for financial reasons. In this particular case there were two children involved. And there is an affidavit in the file on this particular subject. The husband did not want that to happen to his children. He did not want to have the home sold, did not want his children to have to change schools. He wanted them to go through the divorce the best they could.

**94**

We endorse that definition. Autonomy is, of course, the antonym of heteronomy. Approached from either word it is clear that both husband and wife, the parents of two children then of relatively tender years, recognized that their mother should be financially independent so that she would be free to remarry or not remarry as she saw fit, without being required to look for a second husband as a source of support. Equally important, and perhaps more so, the mother would not become compelled to remain married if a second marriage proved unworkable. Otherwise, without financial autonomy the mother and the children might become obligated to remain in an uncomfortable environment.

In our view the agreement to pay alimony in order to give the wife (and mother) financial autonomy was based upon the implicit understanding that this was within the contemplation of the parties a just and equitable provision. It was a commendable arrangement when entered into, and we are persuaded of no reason for it being stricken from the Agreement. It would border on the absurd to speculate that the remarriage of the wife was not considered when the Agreement before us was negotiated and executed. The unambiguous agreement between the parties listed only two alimony-terminating events: the expiration of 121 months; and the death of appellant. Neither one of those events has occurred. This Court will not add to the terms of an unambiguous contract or make a better agreement for the parties than they themselves have been satisfied to make. *Minidoka County v. Krieger*, 88 Idaho 395, 399 P.2d 962 (1964); *J.R. Simplot Co. v. Chambers*, 82 Idaho 104, 350 P.2d 211 (1960).

Our determination is buttressed by section 5 of the Child Custody and Property Settlement Agreement:

The Wife does and shall accept the provisions herein made for her in full satisfaction of her right to the community property of the respective parties hereto, and full satisfaction of any right she might claim to support and maintenance.

The Wife hereby covenants and agrees that so long as the Husband shall duly keep and perform the covenants, agreements, and conditions to be kept and performed by him hereunder, she will not at anytime hereafter contract any debt, charge, or liability whatsoever, for which the Husband or his property of his estate shall or may become liable or answerable.

We find it inescapable that the foregoing references to "the provisions herein made for her" as including the provision for alimony. Accordingly, her acceptance of those provisions was clearly consideration for her declaration that such was "in full satisfaction of her right to the community property," and full satisfaction of any right she might claim to support and maintenance, and her own covenants to the husband therein set forth.

Under section 25 of the Agreement, provision was made for the payment of costs and attorney's fees by the losing party in the event of future litigation was instituted to enforce any of the terms of the agreement.

We reverse the decisions of both courts below, and remand to the district court with directions that an order be entered in favor of the defendant. The defendant is to be awarded the past-due payments with interest, together with all costs and attorney's fees which have been incurred by defendant in the courts below and in this Court, the district court to fix and assess said fees and costs.

*Reversed and remanded* with directions.

HUNTLEY, Acting, C.J., and BISTLINE, Acting J., concur.

### ON DENIAL OF PETITION FOR REHEARING

PER CURIAM.

The respondent husband on petition for rehearing focuses mainly on this paragraph of the Settlement Agreement: "The parties agree to and recognize the Wife's need to acclimatize herself *to single par-*

*enthood* and financial autonomy gradually. With that purpose in mind ...." After observing that the husband's agreement was to pay the wife alimony for 121 months unless she died first, the statement is then made that 121 months was the period of time after the divorce where the wife would have to become accustomed "to single parenthood and financial autonomy." The contention advanced is that "It was not contemplated that respondent would help the wife achieve financial autonomy after she had remarried someone else. The financial autonomy was to go hand in hand with single parenthood."

We are not persuaded to deviate from our original opinion. As is most obvious, the parties entertained differing contemplations; hence, the litigation which resulted on the wife's getting remarried. Although this occasioned her being no longer single, insofar as the minor was concerned she continued to be a single parent. Single parenthood going hand in hand with financial autonomy, as the husband's brief argues, we do not see that financial autonomy should come to an end while single parenthood continued. To the contrary, and as our opinion pointed out, the creation of the wife's financial independence from a second husband was a commendable aspect of the Settlement Agreement.

The brief of the husband brings our attention back to the district judge's observation that "it appears that the omission [as to the effect of the wife's remarriage] was intentional and that each party was motivated by different considerations." Again, it is indeed apparent that each party, advised by competent counsel, did take a stand. The wife would not agree to a provision expressly terminating alimony on remarriage; the husband would not agree to a provision which expressly continued it.

In this particular case, in view of the language above quoted, plus the language which stated that the alimony period of 121 months was selected with an eye toward income tax benefits, and plus the language of Section 5 of the Agreement set forth in our opinion, we remain convinced that the agreement to pay alimony in order to give the wife (and mother of the husband's child) financial autonomy for 121 months was based upon the implicit understanding that this was within the contemplation of the parties a just and equitable provision.

The Petition for Rehearing is denied.