957 P.2d 1387

Joseph L. TERTELING,
Plaintiff–Appellant,

v.

Carolyn A. PAYNE, formerly known as
Carolyn A. Terteling, Defendant–
Respondent.

No. 23268.

Supreme Court of Idaho,
Boise, November 1997 Term.

May 6, 1998.

Manweiler, Bevis & Cameron, P.A.; Boise, for appellant. James A. Bevis argued.

Evans, Keane; Boise, for respondent. Bruce C. Jones argued.

WALTERS, Justice.

In this appeal, the former husband seeks review of the judgment of the district court denying relief on his complaint for modification of a spousal support agreement. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

The thirty-two year marriage of Joseph Terteling (hereinafter "Joe") and Carolyn Terteling (now Payne) was dissolved by interlocutory decree dated August 9, 1991. Subsequent to the entry of the decree, the parties entered into a property settlement and spousal maintenance agreement which by its express terms was not merged into the decree of dissolution. The amount of the spousal support and the terms governing payment of the support by Joe to Carolyn were addressed in Paragraph 10 of the agreement. Subparagraph 10C specified that the spousal support obligation would automatically terminate upon the death of either party or a date certain, January 5,

2002. Subparagraph 10D addressed the possible effect on future maintenance payments of an involuntary disability befalling Joe. Subparagraph 10E sought to control the possible reduction or elimination of continued spousal support to be paid by Joe to Carolyn upon the occurrence of either remarriage or the establishment of a relationship akin to marriage by Carolyn. In either instance, the agreement provided that Joe would be entitled to bring a "contract action" to implement the terms of this provision. Specifically, a reduction or elimination of the support obligation could be implemented by the district court upon a showing of "a substantial material change in financial circumstances of the Wife [Carolyn] brought about by remarriage or the establishment of a relationship akin to that of husband and wife."

In May of 1995 Carolyn married Frank A. Payne, Jr., after Carolyn and Frank executed a prenuptial agreement. The agreement provided that all property owned by either of them at the time of the marriage would remain his or her separate property, as well as any increase in value of the separate property, in which the other would have no interest. Pursuant to the agreement, Carolyn and Frank relinquished all rights to any income from the other's separate property and to any income resulting from the other's personal services, skill, effort and work during the marriage, which, except for the prenuptial agreement would be community property. In the agreement, the parties relinquished any and all rights to support from the other and agreed that neither party shall be required to assume any personal obligation to pay or discharge any debt or obligation of the other.

Approximately one week after Carolyn's marriage, Joe filed an application for modification of the spousal support pursuant to his and Carolyn's property settlement and spousal maintenance agreement. Carolyn answered the complaint and asserted a counterclaim. Carolyn then filed a motion for summary judgment, alleging that in light of the prenuptial agreement entered into with her new husband, Frank, there was no substantial material change of financial circumstances as a result of her remarriage and

therefore no genuine issue of material fact for trial. The district court denied the motion and set the matter for trial.

Following a three-day bench trial, the district court issued its findings of fact and conclusions of law. The district court held that Carolyn had not experienced a substantial material change in her financial circumstances as a result of her remarriage and that Joe was thus not entitled to discontinue his spousal support payments to Carolyn under the terms of their agreement. In reaching its decision, the district court found in relevant part:

(1) Whether or not a prenuptial agreement was entered into, Frank Payne's assets would remain his separate property after his marriage to Carolyn. Except as it has bearing on his income earning potential, the extent of Frank Payne's net worth is not relevant to the issue of whether or not Carolyn's financial circumstances have changed.

(2) The material consideration of whether or not Carolyn's financial circumstances have changed on account of remarriage consists of an inquiry into the income-earning potential of her new husband, and into the question of whether or not that income is or should be available to Carolyn.

On July 31, 1996, the district court entered judgment in favor of Carolyn, including an award of attorney fees to her as the prevailing party. Joe has appealed from the judgment.

## DISCUSSION

### Interpretation of the Agreement

 The ordinary rules of contract construction apply in construing property settlement agreements. *Bondy v. Levy*, 121 Idaho 993, 996, 829 P.2d 1342, 1345 (1992); *Spencer–Steed v. Spencer*, 115 Idaho 338, 766 P.2d 1219 (1988). Where a contract is clear and unambiguous, the determination and legal effect of a contractual provision is a question of law to be decided by the court. *Suchan v. Suchan*, 106 Idaho 654, 660, 682 P.2d 607, 613 (1984). Interpretation of an ambiguous document presents a question of fact. *De-*

*Lancey v. DeLancey,* 110 Idaho 63, 65, 714 P.2d 32, 34 (1986). The determination of whether a document is ambiguous is itself a question of law, which we resolve by examining the document's relevant provisions to determine whether the contract is reasonably subject to conflicting interpretations. *Id.*

The provision at issue in this case is Subparagraph 10E of the parties' support agreement which reads in relevant part:

> The Court shall address the issue of reduction or elimination of alimony in such contract action implementing this paragraph based upon a substantial material change in financial circumstances of the Wife brought about by remarriage or the establishment of a relationship akin to that of husband and wife that provides her economic resources and/or benefits akin to husband and wife, with the absolute proscription that such court cannot remake this Agreement/Contract (Exhibit 1), but rather is limited as stated above to construing this provision only, in light of the needs and necessities of the Wife and in light of the Wife's resources as effected by the remarriage, or the establishment of a relationship akin to that of husband and wife that provides her economic resources and/or benefits akin to husband and wife, and the income and resources of her new husband or the person with whom she establishes a relationship akin to that of husband and wife (that provides her economic resources or benefits akin to that of husband and wife).

Joe contends on appeal that the district court's interpretation of how to measure a substantial, material change of financial circumstances, as prescribed by Subparagraph 10E, ignores the plain meaning of the provision. Joe argues that the parties intended that the income and resources of Carolyn's new husband be considered, along with Carolyn's needs and necessities and her resources, in ascertaining whether Carolyn had experienced a substantial material change of financial circumstances which would warrant modification of the spousal support.

■ As a preliminary determination, we do not view as ambiguous the directive that "[t]he Court shall address the issue of reduc-tion or elimination of alimony in such contract action implementing this paragraph based upon a substantial material change in financial circumstances of the wife brought about by remarriage." Accordingly, the effect of this contractual provision is a matter of law subject to free review by an appellate court. *See Bondy v. Levy,* 121 Idaho at 997, 829 P.2d at 1346.

■ Our task on appeal then, is to review the trial record to determine whether there is substantial and competent evidence to support the district court's findings of fact and whether the district court's conclusions follow from those findings. *Noble v. Fisher,* 126 Idaho 885, 888, 894 P.2d 118, 121 (1995). If the findings are not supported by the evidence, an abuse of discretion has occurred. *Biggers v. Biggers,* 103 Idaho 550, 555, 650 P.2d 692, 697 (1982).

At the outset, the district court determined that the principal purpose of the support arrangement was to ensure Carolyn's financial independence and, therefore, it was incumbent on Joe to show that Carolyn's new husband was providing or was capable of providing her with a means to ensure her financial independence from community income sources which he brought into the marriage. The district court reached its conclusion that Carolyn's financial circumstances had not changed at all as a consequence of her marriage first, without regard to the prenuptial agreement, and then also by considering the effect of the prenuptial agreement. The district court found that any excess remaining after Frank Payne's consumption of his potential community income stream of less than $25,000 gross per year would be nominal in terms of availability to enhance Carolyn's financial circumstances.

■ These findings were supported by evidence contained in the exhibits, including the disclosure statement of Frank's income sources, which but for the prenuptial agreement would have been community property, and his substantial assets at the time of the marriage, which were characterized as his separate property. In addition, Carolyn and Frank testified as to the manner in which they managed their finances, i.e., keeping

their financial affairs separate and dividing up expenses such as food, travel and entertainment, followed by a regular reconciliation process. Carolyn testified that she had received no income or property from Frank, consistent with their prenuptial agreement in which she had relinquished any and all rights to support from him. Carolyn testified that as a couple they were able to discontinue one of their memberships at a country club, eliminate duplicate housing costs, and travel more economically which, even considered together, the district court found to be inconsequential, "given the magnitude of the starting place." Likewise, evidence that the value of Carolyn's home increased by $30,000 as a result of remodeling which was financed with an interest-free loan from Frank was viewed by the district court as insubstantial, in light of the $320,000 appraised value of the home. Finally, Carolyn's accountant testified, based on his calculations which were entered into evidence at trial, that the change in Carolyn's financial circumstances would not qualify as either substantial or material. We conclude, therefore, that the findings of the district court are supported by substantial and competent evidence.

Although this evidence was uncontroverted, Joe argues that the district court erred in finding that the extent of the resources of Carolyn's new husband was irrelevant except as it had bearing on his income earning potential. Joe maintains that the district court was required to consider Frank's income and resources regardless of whether Carolyn had any legal claim to his income and resources. In furtherance of this argument, Joe maintains that the district court should have admitted evidence of the negotiations surrounding the adoption of Subparagraph 10E, which reflected the parties' intention that income and resources should be considered in the context of a marriage or a relationship akin to marriage.

■ The district court, in considering Carolyn's remarriage, properly applied community property principles, holding that the resources brought into the marriage by Carolyn's new husband were his separate property to which Carolyn, his wife, would have no legal claim. *See* I.C. § 32–903. Recog-

nizing that Carolyn was entitled under Idaho law to enter into a prenuptial agreement, I.C. §§ 32–921, –923; *Beard v. Beard,* 53 Idaho 440, 24 P.2d 47 (1933), the district court correctly held that the prenuptial agreement precluded any substantial material change in Carolyn's financial circumstances as a result of her remarriage. Moreover, the spousal support agreement did not address, and, therefore, could not forestall, the effect of a prenuptial agreement which Carolyn might enter into with a prospective spouse. As to the district court's ruling to exclude evidence of the negotiations relating to the support agreement, we agree with the district court that alleged representations made during negotiations leading to a written contract are merged with and superceded by the written contract. *Galaxy Outdoor Advertising, Inc. v. Idaho Transportation Dep't,* 109 Idaho 692, 696, 710 P.2d 602, 606 (1985). The evidence considered by the district court in finding no material change of circumstances as a result of Carolyn's remarriage was evidence that was called for in the terms of subparagraph 10E of the spousal support agreement. Accordingly, we uphold the district court's ultimate finding that Carolyn's remarriage did not result in a substantial material change in her financial circumstances sufficient to justify modification of Joe's spousal support obligation.

## Public Policy

Joe asserts that *Greene v. Greene,* 102 Idaho 891, 895, 643 P.2d 1061, 1065 (1982), mandates, as a matter of public policy, that a divorced husband cannot be compelled to support his former wife after she has become the wife of another, except under the most extraordinary circumstances. He contends that this public policy should overlay the district court's interpretation of the parties' spousal support agreement in this case.

■ Although the remarriage of a divorced wife does not *ipso facto* abrogate the alimony provisions of the decree of divorce, it affords cogent reasons for doing so, and ordinarily the alimony will cease upon remarriage of the wife when the husband applies to be relieved therefrom. *McHan v. McHan,* 59 Idaho 496, 506, 84 P.2d 984, 988 (1938).

**394**

However, the proposition is inapposite where the obligation to pay alimony arises from a contract between the parties. *Simplot v. Simplot,* 109 Idaho 92, 93, 705 P.2d 1047, 1048 (Ct.App.1985). In this case, the express terms of the spousal support agreement do not provide that support automatically terminates upon remarriage; rather, the agreement allows Joe to bring an action to modify or eliminate the support upon a showing of a substantial material change in Carolyn's financial circumstances as a result of the remarriage. Until that showing is made, the support arrangement agreed to by the parties remains unaltered. The agreed terms are not inconsistent with public policy which provides that remarriage terminates alimony, absent an agreement to the contrary. We conclude that there is no public policy overriding the parties' agreement in this case.

**Duty of Good Faith and Fair Dealing**

■ Joe contends that Carolyn breached a duty of good faith and fair dealing which was implied as a matter of law into the spousal support agreement. He argues that by entering into a prenuptial agreement, which operated to preserve Carolyn's right to receive support payments from Joe despite her remarriage, Carolyn impaired his right under the support agreement to reduce or eliminate his support obligation upon her marriage.

It is recognized that:

The implied covenant of good faith and fair dealing is a covenant implied by law in the parties' contract. No covenant will be implied which is contrary to the terms of the contract negotiated and executed by the parties. The covenant requires "that the parties perform in good faith the obligations imposed by their agreement," and a violation of the covenant occurs only when either party violates, nullifies or significantly impairs any benefit of the contract.

*Idaho First Nat'l Bank v. Bliss Valley Foods,* 121 Idaho 266, 289, 824 P.2d 841, 864 (1991). The district court found that the support agreement did not address the effect of a prenuptial agreement upon Carolyn's remarriage and could not be broadened to include a proviso that Carolyn was under some duty to protect Joe's financial interests. This Court will not interpret the agreement to place on Carolyn an obligation not required by the agreement, *DeLancey, supra,* 110 Idaho at 65, 714 P.2d at 34, nor will we make a better agreement for the parties than they themselves have been satisfied to make. *Simplot, supra* at 94, 705 P.2d at 1049. Moreover, because the district court also found from the facts that Joe had failed to show a substantial material change in Carolyn's financial circumstances even without considering the effect of the prenuptial agreement, this issue affords Joe no basis for relief.

**Attorneys Fees**

Lastly, Joe argues that the district court erred in awarding fees to Carolyn as the prevailing party in the contract action. Because we conclude that the district court correctly ruled in Carolyn's favor, we affirm the award of fees.

**CONCLUSION**

We hold that Subparagraph 10E of the spousal support agreement is unambiguous as a matter of law. We uphold the district court's finding that no substantial material change in circumstances resulted from Carolyn's marriage to her new husband, which finding is supported by substantial and competent evidence and will not be disturbed on appeal. We conclude that the parties' support agreement is not in conflict with public policy that provides that remarriage terminates alimony except where there is an agreement specifying otherwise. We also conclude that the prenuptial agreement entered into by Carolyn and her new husband could not be construed as a breach of the duty of good faith and fair dealing or relevant to the district court's decision to award judgment in favor of Carolyn.

We affirm the decision of the district court denying Joe's application for modification of the spousal support agreement. We award attorney fees and costs on appeal to Carolyn

as provided in paragraph 22 of the parties' spousal support agreement.

SILAK, J., and GOFF and BURDICK, JJ. Pro Tem., concur.

TROUT, Chief Justice, concurring in the result.

I concur with the result of the Court's decision, but I disagree with the Court's discussion of the effect of the prenuptial agreement and the Court's application of community property principles to the support agreement.

In reaching its decision that there had been no substantial material change in Carolyn's financial circumstances, the district court found the result to be the same with or without regard to the effect of the prenuptial agreement. The Court's opinion does not address which of these analyses was correct. I write to express the opinion that the proper analysis was to consider the support agreement without regard to the prenuptial agreement. The support agreement and the prenuptial agreement were two independent contracts and must be considered on their own. Carolyn cannot change her obligations under the support agreement by entering into a subsequent contract to which Joe was not a party.

I also disagree with the Court's application of community property principles to decide which of Frank's assets should have been used in determining if her marriage to Frank had resulted in a material change in Carolyn's financial situation. Although the general rule is that courts should apply the principles of community property in analyzing property settlements, this rule does not apply when the parties themselves have reached an agreement that differs from the normal rules of community property. *See, Winn v. Winn,* 105 Idaho 811, 673 P.2d 411 (1983). This Court applies the usual rules of contract construction to property settlements. *Bondy v. Levy,* 121 Idaho 993, 829 P.2d 1342 (1992). "If a contract's terms are clear and unambiguous, ... the meaning of the contract and intent of the parties must be determined from the plain meaning of the contract's own words." *Taylor v. Browning,*

129 Idaho 483, 489, 927 P.2d 873, 879 (1996)(quotes and citations omitted). Subparagraph 10E of the support agreement states that in determining if there has been a change in Carolyn's financial circumstances, the court is to consider "the income and resources of her new husband...." Without the use of a limiting adjective, the plain and ordinary meaning of the word "resources" would include both separate and community resources. The district court and the majority, however, have modified the support agreement by reading the word "resources" to mean community resources. Courts should not interpret contracts to mean something that is not in the contract itself. *Miller v. Remior,* 86 Idaho 121, 383 P.2d 596 (1963). Had Joe and Carolyn intended that the court's consideration be limited only to community income and resources, they could have easily added that limitation to the support agreement. Having failed to add such a limitation, the court "cannot make for the parties better agreements than they themselves have been satisfied to make...." *J.R. Simplot Co. v. Chambers,* 82 Idaho 104, 110, 350 P.2d 211, 214 (1960).

Although I disagree with the method the majority used to reach its decision, I concur with the result. The record shows that the bulk of Frank's assets was contained in an irrevocable trust. Under the terms of the trust, Frank received the income from the trust assets. In addition, Frank could invade the trust principal, but only for "health, support, comfort, enjoyment and welfare." Although, under this language Frank's power to invade the trust principal is broad, it is not unlimited. Because Frank could not use the trust principal to the same extent as a true owner, the district court was correct in excluding the trust assets from its determination of Frank's resources. When only the trust income is considered, there was substantial and competent evidence to support the district court's finding that Carolyn's marriage to Frank did not result in a substantial material change in Carolyn's financial circumstances.