W. JONES, Justice,
dissenting:
I respectfully dissent from the Court’s holding that the QDRO issued by the magistrate court was valid.
A QDRO is a form of relief that is only valid when made pursuant to domestic relations law. Here, the magistrate court was presented with a private contract governed by contract law and enforceable through contract remedies. When the parties entered into the contract, it was fully within their power to avail themselves of the protections of domestic relations law. They explicitly chose not to do so. Accordingly, by issuing the QDRO the magistrate court has: (1) completely ignored the obvious intent of the contracting parties; and (2) impermissibly modified the terms of a contract by changing the methods by which it can be enforced without grounds for doing so.
A QDRO is defined as “a domestic relations order made pursuant to a state domestic relations law.” 29 U.S.C. § 1506(d)(3)(B)(ii)(II), Maslen v. Maslen, 121 Idaho 85, 92 n. 7, 822 P.2d 982, 989 n. 7 (1991)(emphasis added). A domestic relations order is “any judgment, decree, or order (including approval of a property settlement agreement) which relates to the provision of child support, alimony payments or marital property rights to a spouse, former spouse, or other dependent *221 of a participant, and is made pursuant to a State domestic relations law (including community property law).” 29 U.S.C. § 1056(d)(3)(B)(ii)-(I)-(II); Green v. Green, 899 F.Supp.2d 291, 297-98 (D.N.J.2012).
When two persons choose to end their marriage there is no legal requirement that they submit to the court issues regarding division of property, temporary support or alimony, or other property matters.[3] Where an agreement can be reached, divorcing parties have the freedom to determine the disposition of their own property through contract. Once a contract has been formed, should the parties so choose, they have the option to present that contract to a court for its approval and/or to “merge” it into the divorce decree. “[W]hen a separation agreement is submitted to a court in connection with a divorce action and it is merged into the decree, all provisions are thereafter enforceable by the court as a part of its decree and may at a later time be modified by the court.” Phillips v. Phillips, 93 Idaho 384, 386, 462 P.2d 49 (1969). However, where a divorcing party does not choose to submit an agreement to the court, its provisions are not enforceable by the domestic relations court and the right to enforce that agreement rests solely in contract law. See, e.g., Terteling v. Payne, 131 Idaho 389, 393-94, 957 P.2d 1387, 1391-92 (1998); Spencer-Steed v. Spencer, 115 Idaho 338, 344, 766 P.2d 1219, 1225 (1988); Roesbery v. Roesbery, 88 Idaho 514, 521, 401 P.2d 805, 809 (1965); Kimball v. Kimball, 83 Idaho 12, 16, 356 P.2d 919, 922 (1960); Bainbridge v. Bainbridge, 75 Idaho 13, 23-24, 265 P.2d 662, 669 (1954).
In this case, Linda and James Resting, two consenting adults, entered into a private contract for the payment of alimony. The contract specifically provided as follows:
1. PAYMENT OF SPOUSAL SUPPORT/ALIMONY: Jay shall pay to Linda alimony/spousal support in the amount of $1,400 every two weeks commencing on June 11, 2009 and payable every other Thursday.thereafter (i.e. in June 2009 Jay shall pay support of June 11th and June 25th, in July 2009 he will pay support on July 9th and July 23rd and shall continue to pay every other Thursday).
Provided, however, on the first day of the month after the closing of the sale of the residence located at 1399 North Watson, Eagle, Idaho, the spousal support/alimony payment shall change to the amount of $1,600 paid on the first day of each month.
Provided, further, the spousal support/alimony payments shall terminate immediately upon the death or remarriage of Linda or the death of Jay.
2. MODIFICATION: ■ Neither party shall have the right to request that any court modify the alimony/spousal support payments. This shall remain a separate contract and does not constitute a court order.
The language of this private contract makes it exceedingly clear that it was not intended to be submitted to the court for approval or for merger into the divorce decree. Rather, it was to be an entirely “separate contract.” The effect of this choice is that the contract was never made part of the divorce under the domestic relations law of the State of Idaho. Instead, it remained a private contract under contract law.
Regardless of Linda and James’ entry into a contract purposefully left separate from their divorce proceedings, however, the Majority now holds that remedies under domestic relations law are available to enforce contracts outside of domestic relations law. This conclusion has no precedential basis, and appears to have been motivated by a pragmatic desire to aid Linda, as evidenced by the Majority’s reasoning that “without a QDRO Linda might not be able to collect the support owed by James.”
Given that Linda already has a judgment entered in her favor, she has a wide array of contract remedies at her disposal. She has the option of obtaining liens on James’ real and personal property or even garnishing his wages or investment income. However, even if Linda were unable to recover without a QDRO, this Court should not presume that *222 her inability to collect is inequitable. It is important to consider why Linda and James chose not to avail themselves of Idaho’s domestic relations law.
Idaho Code section 32-705 provides no absolute right to spousal support; on the contrary, section 33-705 provides that such support can only be ordered when the court determines that certain conditions have been met, which include consideration of:
I.G. § 32-705 (“Maintenance”) provides:
1. Where a divorce is decreed, the court may grant a maintenance order if it finds that the spouse seeking maintenance: (a) lacks sufficient property to provide for his or her reasonable needs; and (b) is unable to support himself or herself through employment.
2. The maintenance order shall be in such amounts and for such periods of time that the court deems just, after considering all relevant factors which may include: (a) The financial resources of the spouse seeking maintenance, including marital property apportioned to said spouse, and said spouse’s ability to meet his or her needs independently; (b) The time necessary to acquire sufficient education and training to enable the spouse seeking maintenance to find employment; (c) The duration of the marriage; (d) The age and the physical and emotional condition of the spouse seeking maintenance; (e) The ability of the spouse from whom maintenance is sought to meet his or her needs while meeting those of the spouse seeking maintenance; (f) The tax consequences to each spouse; (g) The fault of either party.
Maintenance under Idaho Code section 32-705 may have been available to Linda but it is limited by the language of the statute. Accordingly, instead of seeking maintenance under Idaho Code section 32-705, Linda chose to enter into an agreement outside of the review of the magistrate court, which provided that she would receive monthly payments of $1,600 per month until remarriage or the death of either her or James. Linda obtained a number of benefits from this choice. First, in the present case, there was no assurance that had the matter been submitted to the divorce court Linda would have received any level of alimony, support, or maintenance. By entering into an agreement outside of the means provided by domestic relations law, Linda was able to guarantee lifetime support where she might have received no support at all. Second, the terms of this agreement- appear to be so far in Linda’s favor as to be unheard of in the vast majority of contested divorces. Courts are loath to grant hupport payments for life, especially where the recipient is so young. By entering into a separate contract Linda was able to attain lifetime payments with the only limit being remarriage. Third, the terms of the agreement expressly provide that they are not subject to modification by the district court. Where a spousal support provision is merged into a divorce decree it is modifiable by the court where a party can show an unforeseen change in circumstances. Borley v. Smith, 149 Idaho 171, 177, 233 P.3d 102, 108 (2010). By opting to eschew merger, Linda ensured that her support would not be reduced or cut off should James become unable to pay.
Clearly then, there are a number of bargained for benefits which Linda was able to assume by entering into the contract as written; however, the agreement was not completely one-sided. In exchange for these relatively extreme concessions, James bene-fitted by keeping the agreement in contract law, which does not allow for the use of a QDRO—a remedy available only under domestic relations law to enforce a decree of support.
Whether the contract between James and Linda was better for one than the other is irrelevant. The point is that two competent adults, who were represented by experienced and competent attorneys well acquainted with Idaho’s domestic relations law, decided to make a contract regarding future alimony, support and maintenance, which they clearly had a right to do, rather than submitting the issue to the court for an uncontrolled and unknown result. That contract was presumably made knowingly and intelligently by the contracting parties. It should now be en *223 forced through the avenues available for contract enforcement.' By granting a QDRO, the court has nullified one side of the bargained for agreement. Further, the court effectively modified the contract .itself, by changing the methods by which it can be enforced. The magistrate court had no grounds on which it could take such an extreme action.
Under the facts of this case, I cannot agree that the enforcement of the federal law regarding QDRO can or should be used to enforce or modify a private contract. I strongly support the decision of the district judge that the QDRO in this casé was erroneously issued to enforce a contract that was not merged into the divorce decree, was not modifiable by the magistrate court, and was not issued pursuant to the domestic relations laws of the State of Idaho.
I would affirm the district court.

. Excepting decisions regarding child support and custody.