82 P.3d 845

**Ronald E. FOSTER, Plaintiff–Appellant,**

v.

**Judith A. SCHORR, formerly Judith A. Foster, Defendant–Respondent.**

No. 28252.

Supreme Court of Idaho, Cd'A, October 2003 Term.

Dec. 23, 2003.

Finney & Finney, Sandpoint, for appellant. Rex A.M. Finney argued.

James H. Paulsen, Sandpoint, for respondent.

TROUT, Chief Justice.

Ronald Foster appeals the district judge's judgment declining to alter or negate the provisions of the Property Settlement Agreement entered into between Foster and Judith Schorr in their divorce action in 1990. Foster also appeals the district judge's order requiring him to pay Schorr rent while living in their former residence after the agreed-upon date of his departure from the residence in 1997.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Ronald Foster and Judith Schorr (formerly Judith Foster) were divorced in 1990 after thirty years of marriage. They concurrently

entered into a Property Settlement Agreement ("PSA") that was not merged with the decree of divorce. This PSA awarded their former residence to Schorr but allowed Foster to live there until July 1997, or until the encumbrance on it being paid by Foster was paid in full, whichever occurred first. The PSA also provided that Schorr would receive spousal support ("maintenance") from Foster in the amount of $666.00 per month until January 2006, or until Schorr died, whichever occurred first. Additionally, the PSA required Foster to maintain a "cancer medical insurance policy" for Schorr, to remain in effect until her death.

Schorr remarried in 1992, but Foster continued paying Schorr maintenance according to the terms of the PSA. In 1994, Foster's insurance carrier through whom Foster had been providing cancer insurance for Schorr learned that Foster and Schorr were no longer married and, therefore, terminated the coverage because Foster no longer had an insurable interest in Schorr. Foster did not pursue other coverage for Schorr.

In the spring of 1997, Foster and Schorr began negotiating for Foster to purchase the home from Schorr. Along with these negotiations, Foster and Schorr orally agreed that Foster would pay rent of $1000.00 per month to Schorr for any months he remained in the residence past July 1, 1997. The negotiations for Foster to purchase the residence fell through shortly after they began. Foster remained in the home past July 1, 1997, but did not pay any rent to Schorr, claiming that he could not afford the payments.

In January 1998, Foster filed a complaint in district court seeking to terminate his maintenance obligation to Schorr and seeking declaratory judgment as to his property rights in their former residence. Schorr counterclaimed in July 1998 that Foster had breached the terms of the PSA in that he had 1) ceased to pay maintenance since December 1997, 2) failed to maintain cancer insurance for Schorr since 1994, and 3) failed to vacate the residence on or before July 1997 as required by the PSA. The district court granted partial summary judgment for Schorr on the issue of maintenance, finding Schorr's remarriage did not remove Foster's obligation to pay according to the terms of the PSA.

At trial, Foster claimed that when the PSA was being drafted and signed, he had been mistaken as to the date on which the encumbrance would be paid off, believing it would be paid off in 1997 instead of 2000 when it was actually due to be paid in full. He claimed he had agreed to allow July 1997 to be his date of departure from the residence because he believed this was when the debt would be satisfied, and he intended these two dates to coincide. Foster additionally claimed that Schorr was aware of this mistake and had a fiduciary duty to apprise him of the inaccuracy.

At the conclusion of the trial, the district judge ruled in Schorr's favor on all remaining issues. The district judge declined to reform the PSA due to Foster's alleged mistake, instead ruling that Foster was required to pay rent of $1000.00 a month for the time after June 1997 that he had remained in the home. The district judge also ordered Foster to pay premiums on a cancer insurance policy acquired by Schorr, and awarded attorney fees to Schorr. Foster now appeals from that decision.

## II.

## MAINTENANCE

Foster has asked this Court to negate the provisions of the PSA he entered into with Schorr which provided he would pay maintenance to Schorr until January 2006 or until Schorr died, whichever event occurred first. Foster argues that on public policy grounds the subsequent remarriage of the spouse receiving maintenance should always terminate the payor's obligation. In support of his contention, Foster cites *Greene v. Greene*, 102 Idaho 891, 643 P.2d 1061 (1982), and *McHan v. McHan*, 59 Idaho 496, 84 P.2d 984 (1938), both of which stand for the general principle that remarriage of the spouse receiving maintenance usually terminates the support obligation.

■ This Court has held in the past, however, that when the parties entering into a property settlement agreement do not in-

tend, and specifically contract against, the termination of maintenance upon the remarriage of the spouse receiving it, then those maintenance payments will continue on despite remarriage. We have held that *"[e]xcept as otherwise agreed by the parties in writing,* the obligation of any party in any decree, judgment or order for the support and maintenance of the other party shall terminate upon the death of the obligor or upon the remarriage of the other party." *Keller v. Keller,* 130 Idaho 661, 665, 946 P.2d 623, 627 (1997) (emphasis added). Paragraph 2 B of the PSA between Foster and Schorr provides: "The parties agree that the amount and terms of spousal support set out in this Agreement shall not be modifiable in any way by either party for any reason."

Paragraph 9(I) further provides:

Not withstanding such approval and incorporation, the provisions of this Agreement pertaining to spousal support and to settlement and division of properties shall not be merged into the decree, but shall be forever binding and conclusive upon the parties. The parties intend that these provisions shall not be subject to modification by any court.

This clear language demonstrates the intent of the parties, embodied in the PSA, was that it not be modified by a court for any reason. Therefore, Foster's attempt to have the maintenance provision nullified now goes against the clear provisions of the agreement.

## III.

### RESIDENCE

#### A. Unilateral Mistake

Foster also argues on appeal that the district judge erred in not finding that Foster's alleged unilateral mistake as to the encumbrance payoff date on the residence was a basis for reformation of the PSA. We affirm the decision of the district court.

■ Foster gives no reasoned basis why his unilateral mistake, if any, would be grounds for reformation of the contract. Foster argues that because he was mistaken as to the payoff date of the encumbrance, the

PSA should be reformed to provide that he was entitled to live in the residence until November 2000 and not July 1997, as stated in the agreement. However, he presents no facts to show that the date he was required to leave the residence—July 1997—was tied to the date the encumbrance would be paid in full. Indeed, the PSA specifically provided that Foster was to vacate the residence on July 1, 1997 or when the promissory note was paid, whichever occurred first.

#### B. Fiduciary Duty

■ Foster also argues Schorr had a fiduciary obligation to him as his spouse that lasted until the date their divorce became final and, therefore, she was under a fiduciary duty when they were negotiating the terms of the PSA and her failure to apprise him of his mistake as to the payoff date of the encumbrance constituted a breach of that duty. While this Court has held that spouses do have a fiduciary obligation toward each other (*Smith v. Smith,* 124 Idaho 431, 440, 860 P.2d 634, 643 (1993)), and while we agree with Foster that such a fiduciary duty remains intact until the marriage is finally dissolved (*Compton v. Compton,* 101 Idaho 328, 336, 612 P.2d 1175, 1182 (1980)), we do not find that Schorr did anything to mislead Foster or to otherwise violate her fiduciary duty toward him. The district court was correct in refusing to reform the PSA based on this alleged unilateral mistake.

## IV.

### RENT

Foster argues that based upon his mistake regarding the payoff date on the residence, he should not be required to pay rent to Schorr for the months he remained in the residence beyond July 1, 1997. Because we have found Foster was obligated to leave the residence on that date, we affirm the district judge in ordering Foster to pay Schorr rent for the months he remained in the residence past this time.

■ Foster has argued that rent of $1000.00 per month is too high an amount for him to pay because he was paying property

taxes and other expenses on the residence during this same time period. However, based on evidence presented at trial that Foster and Schorr specifically agreed to this amount of rent to be paid after July 1, 1997, the district judge had sufficient grounds to order Foster to pay it and we uphold this decision.

Foster also argues that, pursuant to an order Schorr obtained in a separate court action, Foster has already paid Schorr $3,300.00 in rent for the period of January through May of 1998, and is entitled to a credit in this amount toward the amount the district judge has ordered him to pay in this case. Schorr acknowledged she has received this amount from Foster and, therefore, we agree Foster is entitled to a credit of $3300.00 against the amount of rent the district court has ordered Foster to pay Schorr for the holdover period from July 1, 1997, to November 10, 1999.

## V.

### INSURANCE PREMIUMS

Foster argues that he should not be required to pay for cancer medical insurance policy premiums on a policy acquired by Schorr because the terms of the PSA required that he acquire the policy himself and name Schorr as a beneficiary. Because they are now divorced, it is impossible for him to carry Schorr on his insurance and, therefore, he argues he should have no further obligation to provide insurance. At trial, the district judge found that Schorr need not be a beneficiary of a policy acquired by Foster; rather that she need only be the named insured on some policy. Accordingly, the district judge ordered Foster to pay the premiums on a policy acquired by Schorr.

Paragraph 4 of the PSA provides: "The Husband agrees to maintain the Wife as beneficiary of a cancer medical insurance policy which provides 100% medical insurance coverage until the Wife's death." We agree with the district judge and do not read this provision to require Foster to maintain Schorr on his own insurance. The provision simply requires Foster to "maintain" Schorr as the beneficiary of "a cancer medical insur-

ance policy." Therefore, it is entirely in keeping with the provisions of the PSA that Foster pay the premiums on a cancer insurance policy acquired by Schorr, and we affirm the district judge's decision.

## VI.

### ATTORNEY FEES

Schorr was awarded attorney fees at trial and now asks for the same on appeal. Paragraph 9(F) of the PSA provides in part: "The breaching party shall pay a reasonable attorney fee to the non-breaching party in the event legal fees are incurred to enforce this Agreement." Where a divorce settlement agreement contains a provision granting attorney fees to the spouse seeking to enforce its terms, the award of fees is proper when the non-breaching spouse seeks to uphold the agreement. *Badell v. Badell,* 122 Idaho 442, 449–450, 835 P.2d 677, 684–85 (Ct.App.1992). Pursuant to the PSA provision, we affirm the district judge's award of attorney fees below and we award fees on appeal to Schorr.

## VII.

### CONCLUSION

We affirm the district court's decision finding that Foster is required to pay maintenance to Schorr according to the terms of the PSA. We also agree with the district court that there was no unilateral mistake on the part of Foster warranting reformation of the PSA, and that Foster should pay Schorr rent for the months he remained in the residence past the date agreed upon in the PSA, reduced by the amount previously paid by Foster. Finally, we uphold the district court's order requiring Foster to pay for a cancer medical insurance policy obtained by Schorr, and for Schorr's attorney fees and costs below and on appeal.

Justices SCHROEDER, KIDWELL, EISMANN and BURDICK, concur.