# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 49207

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Coeur d'Alene, September 2023 Term |
| | ) | |
| v. | ) | Opinion Filed: December 5, 2023 |
| | ) | |
| KENNETH BERNARD KIMBLEY, III, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Bonner County. Barbara A. Buchanan, District Judge.

The judgment of conviction is <u>affirmed</u>.

Phelps & Associates, Spokane, Washington, for Appellant, Kenneth Bernard Kimbley, III. Douglas D. Phelps argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent, State of Idaho. Justin R. Porter argued.

_____

STEGNER, Justice.

This case concerns a criminal trial that occurred during the COVID-19 pandemic. In addition, this appeal largely serves as a cautionary illustration of the consequences of failing to preserve issues for appeal. In June 2021, Kenneth Bernard Kimbley, III, was found guilty on four counts of lewd and lascivious conduct following a jury trial and sentenced to four concurrent sentences, each for a determinate period of not less than fifteen years and an indeterminate period of not more than fifteen years, for a total unified sentence not to exceed thirty years. Kimbley has timely appealed, raising constitutional and evidentiary challenges to his convictions. For the reasons set forth below, including the failure to preserve issues for appeal, we affirm Kimbley's conviction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In June 2019, a Bonner County grand jury indicted Kenneth Bernard Kimbley, III, with nine counts of lewd and lascivious conduct that allegedly occurred from 2011 to 2014. Kimbley pleaded not guilty to all counts, and the case was set for trial. While awaiting trial, Kimbley was

1

released from jail on bond in July 2019. However, the following month the district court revoked Kimbley's conditional release and issued a warrant for his arrest after finding that Kimbley had not been released with an ankle monitor, a condition required by the terms of his release.

Efforts to find and arrest Kimbley were initially unsuccessful, in part due to difficulties associated with the COVID-19 pandemic. During this time, Kimbley failed to appear at his pretrial conference and had no contact with his attorney. Kimbley was ultimately arrested the next year in December 2020 in Washington and extradited back to Idaho. Detective Reinink of the Bonner County Sheriff's Office was the lead investigator in charge of locating Kimbley. In an affidavit, Detective Reinink stated that at the time of his arrest in Washington, "Kimbley had been residing with his girlfriend, Arin Johnson, in an apartment in the Spokane Valley area." Detective Reinink also claimed that "Johnson made admissions to Officer Gordon [with the Coeur d'Alene Police Department] that she and Mr. Kimbley had left Idaho in the middle of October[] 2019[] and moved to Spokane Valley." Johnson also admitted that during Kimbley's time in Washington, he used an alias and "work[ed] under the table." Detective Reinink concluded that "I am convinced that Mr. Kimbley fled the area of southern Bonner County, northern Kootenai County to a neighboring state to avoid prosecution."

Following his extradition back to Idaho, Kimbley filed two relevant motions prior to trial. First, Kimbley moved the district court to sever the charges in the indictment because Counts I–III pertained to allegations made by one victim, A.N., and Counts IV–IX pertained to allegations made by another victim, E.N. The district court held a hearing on the motion in February 2021, at which all parties appeared remotely via Zoom. The district court granted Kimbley's motion to try the charges separately.

Second, Kimbley filed a motion in limine to exclude "testimony or evidence regarding the Defendant's alleged flight from Bonner County while trial was pending, and his subsequent arrest and extradition from the state of Washington." The district court held a hearing on the motion in April 2021 at the Bonner County Courthouse. While Kimbley attended the hearing in person, his attorney attended remotely via Zoom. After the hearing, the district court issued a written decision denying Kimbley's motion in limine. The district court concluded that evidence of Kimbley's flight was "relevant because it may indicate a consciousness of guilt." The district court further concluded that "the probative value of this evidence of flight is not substantially outweighed by the danger of unfair prejudice"; however, the district court limited the prosecution's focus on this

evidence to guard against the danger of unfair prejudice. Specifically, the district court stated:

> [T]he State shall not be allowed to focus on the details or sensationalize Kimbley's flight, or to render opinions or theories as to the reason for his flight. For example, the [c]ourt shall not allow any statements like those in Detective Reinink's Declaration that, while a fugitive, "Mr. Kimbley was using the alias of Mark during that time," and that he "was working under the table"; or that Detective Reinink is "convinced that Mr. Kimbley fled . . . to avoid prosecution."

In short, the only admissible evidence regarding Kimbley's fugitive status was "that Kimbley fled from prosecution in Bonner County while awaiting trial and was subsequently arrested in, and extradited from the State of Washington . . . [and] [e]vidence of the length of time that Kimbley was a fugitive[.]"

Kimbley's trial on Counts IV–IX occurred in June 2021 at the Bonner County Courthouse. While the district court's staff, the parties to the case, and the jury were all physically present in the courtroom, the district court began the trial by issuing the following order limiting public access to the courtroom to view the trial ("the Livestream Order"):

> I do have to make some specific findings in the age of COVID. We are conducting this trial in accord with the Idaho Supreme Court's emergency orders for jury trials and court proceedings during the COVID[-]19 pandemic. That means that we have to maintain adequate social distancing. Unfortunately, the lack of sufficient physical space for the required social distancing prevents the public from being physically present in the courtroom during this trial.
>
> The [c]ourt hereby finds that health and safety concerns override other interests in allowing the public to be physically present in the courtroom. In lieu of allowing the public to be present in the courtroom, the [c]ourt is providing public access to this trial through a live video and audio stream of the proceedings. The [c]ourt finds that our capability to live stream is both a narrowly tailored and a reasonable alternative to in-person attendance at this trial.

The emergency order referenced by the district court was the Amended Order regarding the "Emergency Order Regarding Court Services" issued by this Court on May 20, 2021 ("the Amended Order"). In a section titled "Live Streaming of Proceedings[,]" the Amended Order required that before a court may restrict public attendance at a proceeding traditionally open to the public, the presiding judge must make certain findings. Specifically, the trial court was obligated to find that:

i. health and safety concerns override other interests in allowing the public to be physically present in the courtroom;

ii. denial of the public's physical presence in the courtroom is necessary to protect the health and safety of those participating in the proceeding, including, if applicable,

3

a lack of sufficient physical space for adherence to required social distancing;

iii. [t]he assigned judge has considered other reasonable alternatives to allow the physical presence of the public;

iv. [t]he assigned judge has made findings on the record that live streaming is an appropriate alternative because

1. No reasonable in-person alternative is available that would sufficiently ensure the health and safety of those participating in the trial; and

2. The available live streaming capability is a narrowly tailored and reasonable alternative.

The Amended Order also provided that "[i]f the public cannot be physically present in the courtroom, a public[ly] accessible live audio and video stream of the proceedings must be provided." In short, based on its application of the Amended Order, the district court ordered that members of the public were only allowed to view the trial via livestream.

The trial then commenced with the State's case in chief, during which the State introduced evidence that Kimbley had fled prosecution and was later apprehended in Washington. In addition to other evidence, the State also called E.N. (the victim) to testify as a witness. During the defense's cross-examination of E.N., Kimbley's attorney asked E.N. in reference to a specific instance of lewd and lascivious conduct, "Did [Kimbley] pull a gun on you that night?" E.N. responded, "That night, no." As a result of this question, the State (outside the presence of the jury) asked the district court for permission to inquire further into E.N.'s memory of "any time that Ken pulled a gun on [E.N.] and frightened [E.N.]" Kimbley's attorney opposed the State's request, explaining that she had only asked E.N. the question about the gun for the purpose of "impeachment" because, in earlier interviews, E.N. had mentioned that Kimbley had pulled a gun on him during that instance of lewd and lascivious conduct. The district court ruled that it would permit the State to inquire into the issue on redirect examination. Specifically, the district court stated:

> But I am not going to prohibit on redirect if [the State] is trying to ask him—because I'm sure he's going to want to ask him about this interview, what he remembers, why did he say that. I mean, he might say I was confused, there was another incident where a gun was pulled. [The State] is allowed to ask that. So I think that's as far as we can go at this point.

On redirect examination, the State asked E.N. several questions regarding his memory of Kimbley's gun possession and if Kimbley had ever pulled a gun on him.

Later during the trial, Kimbley called his girlfriend, Arin Johnson, to testify. On cross-examination, the State asked if she had assisted Kimbley in fleeing prosecution. Johnson

4

responded that she could not answer the question because there was an ongoing investigation into the matter. The district court then allowed Johnson to invoke her Fifth Amendment privilege against self-incrimination regarding the State's investigation. However, later during the State's closing argument, the State told the jury that it should not believe Johnson's testimony, partly because she had invoked her Fifth Amendment right:

> Ms. Johnson is a long[-]time girlfriend of Mr. Kimbley's[;] she has bias. Worse than that, she exerted [sic] her rights to Fifth Amendment as is her constitutional right[] to self-incrimination. Okay, she's allowed to do that[.] [G]uess what you're allowed to do[?] Not give her testimony any weight whatsoever. And you should not.

The jury ultimately found Kimbley guilty on four counts[1] of lewd and lascivious conduct. The district court sentenced Kimbley to four concurrent sentences for a determinate period of not less than fifteen years and an indeterminate period of not more than fifteen years, for a total unified sentence not to exceed thirty years. This appeal followed.

## II. STANDARDS OF REVIEW

1. Fundamental Error Doctrine

Generally, issues that have not been preserved for appeal will not be heard by this Court. *State v. Miramontes*, 170 Idaho 920, 924, 517 P.3d 849, 853 (2022). However, in *State v. Perry*, this Court explained that the fundamental error doctrine will allow a defendant to raise an issue on appeal that has not been properly preserved. 150 Idaho 209, 228, 245 P.3d 961, 980 (2010). To succeed on this argument, the defendant must satisfy a "three-prong inquiry wherein the defendant bears the burden" to persuade this Court that the error "(1) violates one or more of the defendant's unwaived constitutional rights; (2) plainly exists (without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision); and (3) was not harmless." *Id.* at 228, 245 P.3d at 980. If the defendant proves each of the three prongs of the test, then the appellate court shall be obliged to vacate the conviction. *Id.*

Claims of prosecutorial misconduct will not "be treated any different than other errors occurring at trial." *Id.* at 220, 245 P.3d at 972. "Where prosecutorial misconduct was not objected to at trial, Idaho appellate courts may only order a reversal when the defendant demonstrates that

---

[1] The district court dismissed two of the original six counts of lewd and lascivious conduct following Kimbley's motion for judgment of acquittal. *See* I.C.R. 29.

5

the violation in question qualifies as fundamental error[.]" *Id.* at 227, 245 P.3d at 979.

2.  Idaho Rules of Evidence Issues

Evidentiary questions of relevance are reviewed de novo, "while the decision to admit relevant evidence is reviewed for an abuse of discretion." *State v. Garcia*, 166 Idaho 661, 669, 462 P.3d 1125, 1133 (2020) (internal quotation marks and citation omitted). Admission of evidence pursuant to Idaho Rule of Evidence 404(b) is also reviewed for an abuse of discretion. *State v. Anderson*, 168 Idaho 758, 766, 487 P.3d 350, 358 (2021) (internal citation omitted).

> When reviewing a lower court's decision for an abuse of discretion, this Court must analyze "whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason."

*State v. Bodenbach*, 165 Idaho 577, 591, 448 P.3d 1005, 1019 (2019) (quoting *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018)).

## III. ANALYSIS

### A. The district court did not commit fundamental error when it made the decision to livestream Kimbley's trial.

Kimbley's first argument on appeal is that the district court's Livestream Order violated his Sixth Amendment right to a public trial. As an initial point, while Kimbley appears to concede that he never objected to the Livestream Order below, he suggests that this Court may consider this issue on appeal because its consideration is necessary to correct a "fundamental error." (Quoting *State v. Johnson*, 149 Idaho 259, 265, 233 P.3d 190, 196 (Ct. App. 2010)). The State also agrees that because Kimbley failed to object below, he can only raise the issue on appeal if it constitutes fundamental error.

The parties are correct that Kimbley never objected to the Livestream Order in district court. As a result, the only way he can challenge it on appeal is if it constituted fundamental error. "Idaho has limited appellate review of unobjected-to error[s] to cases wherein the defendant has alleged the violation of a constitutionally protected right." *Perry*, 150 Idaho at 226, 245 P.3d at 978 (internal citation omitted). "If the alleged error was not followed by a contemporaneous objection, it shall only be reviewed by an appellate court under Idaho's fundamental error doctrine." *Id.* at 228, 245 P.3d at 980.

The first element of the fundamental error doctrine requires the defendant to prove that the alleged error violated an unwaived constitutional right. *See id.* Kimbley argues that the Livestream

6

Order violated his right to a public trial because the district court failed to make the requisite factual findings pursuant to *Waller v. Georgia*, 467 U.S. 39, 48 (1984), and the Amended Order issued by this Court. Kimbley also contends that livestreaming the trial was an insufficient alternative to in-person attendance because many members of the public were likely unable to access the livestream. The State responds that Kimbley's right to a public trial was not violated because he failed to object to it, and that, in any event, the Livestream Order is constitutional because it satisfies the *Waller* test.

We conclude that the Livestream Order did not violate Kimbley's constitutional rights, and was therefore not fundamental error. Criminal defendants have a right to a public trial under the Sixth Amendment to the United States Constitution as well as Article I, section 13 of the Idaho Constitution. *See State v. Clark*, 135 Idaho 255, 258, 16 P.3d 931, 934 (2000). This right is not absolute, but rather "'the right to an open trial may give way in certain cases to other rights or interests.'" *United States v. Allen*, 34 F.4th 789, 796–97 (9th Cir. 2022) (quoting *Waller*, 467 U.S. at 45) (internal quotation marks omitted).

In determining whether a limitation on public access to a trial violates the Sixth Amendment, both parties rely on the test outlined by the United States Supreme Court in *Waller*. However, this Court has explained that "[t]he *Waller* test only applies if the accused *objects* to closing the court." *See State v. Ingraham*, 172 Idaho 30, 36, 528 P.3d 966, 972 (2023) (italics added) (citing *Waller*, 467 U.S. at 47–48). This is because "absent a defense objection, the right to a public trial cannot be violated in any event, as the right applies only when all or part of the trial is closed *over a defense objection*." *State v. Fairchild*, 158 Idaho 577, 581 349 P.3d 431, 436 (Ct. App. 2015) (italics added) (citing *Waller*, 467 U.S. at 42). Here, Kimbley concedes he never objected to the Livestream Order in the district court. Consequently, Kimbley is deemed to have waived his right to a public trial. Therefore, Kimbley did not suffer a constitutional violation because he waived that right in the first instance. As such, the Livestream Order did not constitute a fundamental error, and we affirm the decision of the district court.[2]

---

[2] We pause to note that this Court, as well as others, have upheld similar limitations to court proceedings during the COVID-19 pandemic. *See Ingraham*, 172 Idaho at 36, 528 P.3d at 972 (affirming limitation on public, in-person attendance at trial); *United States v. Ansari*, 48 F.4th 393, 401–03 (5th Cir. 2022) (upholding restriction on access to a trial that limited the public to an overflow room with a live video stream). Moreover, the factual findings made by the district court in issuing the Livestream Order appear to be in accordance with the Amended Order's required findings, which themselves are modeled after the *Waller* test's four factors. *Cf. Waller*, 467 U.S. at 48. Nevertheless, because Kimbley failed to object to the Livestream Order below, we need not address its merits.

**B. Kimbley failed to preserve his argument that his right to counsel was violated.**

Kimbley next argues that his right to counsel under the Sixth and Fourteenth Amendments of the United States Constitution was violated because "he was unable to communicate with his attorney" during pretrial hearings in which his attorney appeared remotely. Kimbley identifies the two hearings on his motion to sever charges and his motion in limine, respectively, as examples in which his counsel appeared remotely by Zoom. Kimbley contends that "the [district] court failed to advise [him] of his essential right to confer with counsel and failed to discuss the procedure for if he needed to speak with his attorney." Kimbley argues this omission by the district court violated his right to counsel. However, Kimbley did not raise this issue before the district court and did not argue the district court's alleged violation of his right to counsel constituted fundamental error in his opening brief on appeal. Although Kimbley argued fundamental error in his reply brief, it is well established that "this Court will not consider arguments raised for the first time in the appellant's reply brief." *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005) (internal quotation marks and citation omitted). "A reviewing court looks only to the initial brief on appeal for the issues presented because those are the arguments and authority to which the respondent has an opportunity to respond in the respondent's brief." *Id.* This is true even when the appellant alleges a fundamental error occurred. *State v. Ingraham*, 172 Idaho 30, 36, 528 P.3d 966, 972 (2023). Therefore, we decline to consider Kimbley's argument that this issue constituted fundamental error.

Even if we were to consider Kimbley's argument in this regard, we would still conclude he has failed to satisfy the fundamental error test. Notably absent from Kimbley's reply brief is any legal authority stating whether a district court has an obligation to advise a defendant that he can communicate with his counsel. Kimbley instead offers only vague or conclusory allegations to the effect that he was "unduly prejudiced" by his counsel's remote attendance and that "the use of remote technology, specifically Zoom, and its potential impact on effective legal representation were only anticipated or addressed after the trial." However, to successfully show fundamental error occurred, Kimbley would have to demonstrate that his inability to communicate with his attorney at two *pretrial hearings* affected the outcome of trial. *State v. Perry*, 150 Idaho 209, 226, 245 P.3d 961, 978 (2010). Kimbley provides no real explanation as to *how* he was prejudiced because of his counsel's remote attendance (i.e., that he needed to talk with his attorney privately and that his inability to do so somehow affected the outcome of the trial). Without more, even if

8

his argument were preserved, we cannot conclude that Kimbley has shown the alleged violation of his right to counsel resulted in him being prejudiced. Even assuming for the purposes of argument that Kimbley was unable to communicate with his counsel during two pretrial conferences, there is nothing to suggest he was unable to discuss the problem with his counsel and have his counsel address the problem prior to trial.

We acknowledge, as a general matter, that virtual hearings may affect a defendant's ability to communicate with one's counsel. In such circumstances, it is best practice, in any proceeding where a defendant or one's counsel appear remotely, for the court to advise the defendant that if he wishes to speak with his attorney during the proceeding, an opportunity to do so will be afforded. However, because Kimbley took no issue with his counsel's remote attendance before the district court, and there has been no showing that he was deprived of the ability to communicate with his counsel, we conclude Kimbley waived the issue on appeal.

### C. The district court did not err when it admitted evidence of Kimbley's flight.

Kimbley next argues that the district court erred by denying his motion in limine to exclude evidence that he fled prosecution. The district court concluded that "(i) evidence of Kimbley's flight from prosecution is relevant because it may indicate a consciousness of guilt; and (ii) the probative value of this evidence of flight is not substantially outweighed by the danger of unfair prejudice." However, the district court also ordered that "to minimize the prejudicial impact of this evidence, the State shall not be allowed to focus on the details or sensationalize Kimbley's flight, or to render opinions or theories as to the reason for his flight."

Kimbley contends that any evidence pertaining to his warrant status was irrelevant and unfairly prejudicial because "the length of time [as a fugitive] was not introduced for any reason other than to create an inference of . . . Kimbley's guilt." In response, the State contends that the evidence that Kimbley fled Idaho was admissible pursuant to Idaho Rule of Evidence 404(b). The State suggests that this evidence was properly admitted, not as impermissible character evidence, but as evidence "demonstrat[ing] consciousness of guilt." The State also argues that the district court properly limited the State's use of the evidence such that it was not unfairly prejudicial.

While Idaho Rule of Evidence 404(b) generally prohibits evidence of a defendant's other crimes or acts, such evidence is admissible to prove a defendant's "consciousness of guilt." *State v. Sheehan*, 139 Idaho 267, 279, 77 P.3d 956, 968 (2003). Moreover, this Court has previously recognized that a defendant's flight from prosecution can evidence a consciousness of guilt. *See*

9

*State v. Moore*, 131 Idaho 814, 819, 965 P.2d 174, 179 (1998). For a defendant's departure to constitute a flight from prosecution, "'there must be other circumstances present and unexplained which, together with the departure, reasonably justify an inference that it was done with a consciousness of guilt and in an effort to avoid apprehension or prosecution based on that guilt.'" *Id.* (internal quotation marks and citation omitted).

In *Moore*, this Court outlined the standard for admitting evidence of flight:

> Admission of evidence which is probative on the issue of flight to avoid prosecution requires the trial judge to conduct a two-part analysis. First, the judge must determine that the evidence is relevant under [Idaho Rule of Evidence] 401, and second, the judge must determine that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. This Court reviews the question of relevancy in the admission of evidence de novo. A court's decision that evidence is more probative than prejudicial is reviewed for abuse of discretion.

*Id.* (internal citations omitted).

It is evident that Kimbley's flight was relevant to the issues in his trial. "Evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Id.* (quoting I.R.E. 401). In accordance with the district court's decision regarding Kimbley's motion in limine, the State introduced testimony at trial that, after his arrest and subsequent release on bond, Kimbley failed to appear for pretrial proceedings and was ultimately found and arrested sometime later in Washington. The State also referenced Kimbley's flight in its opening statement as well as in its cross-examination of Arin Johnson. This evidence was relevant because it tended to prove that Kimbley was consciously aware that he was guilty of the charged crimes and that he fled Idaho to avoid prosecution and conviction. *See id.* The evidence was also relevant to impeach Johnson by proving she was biased as a witness. For these reasons, we conclude the evidence of Kimbley's flight was relevant.

We also conclude that the district court did not err in concluding that the evidence was not unfairly prejudicial under Idaho Rule of Evidence 403. In fact, the district court appropriately exercised its discretion and limited the admission of the more prejudicial details of Kimbley's flight. Specifically, the district court prohibited the State from disclosing that Kimbley used an alias and worked under the table while in Washington. The district court also prohibited the State from offering Detective Reinick's opinion as to why Kimbley had left Idaho. By limiting the State's use of the evidence in this way, the district court mitigated the risk of any unfair prejudice.

10

Kimbley nonetheless contends that alternative reasons exist to explain why he left Idaho other than because of consciousness of guilt. Kimbley suggests that the possibility of alternative explanations significantly diminishes the probative value of the evidence of his flight. However, contrary to Kimbley's argument, "the existence of alternative reasons for the escape or flight goes to the *weight* of the evidence and not to its relevance or admissibility." *State v. Rossignol*, 147 Idaho 818, 823, 215 P.3d 538, 543 (Ct. App. 2009) (italics added). Thus, whether alternative explanations exist—and Kimbley has not pointed to any such explanations in the record on appeal—is immaterial to the evidence's admissibility. Accordingly, the district court did not abuse its discretion in admitting evidence of Kimbley's flight.

**D. The district court did not err in admitting testimony regarding Kimbley's possession of a firearm.**

Kimbley's next argument on appeal is that the district court erred by admitting evidence of his firearm possession. Evidence that Kimbley possessed a firearm was first proffered by his own counsel during her cross-examination of E.N., a witness for the State. Kimbley's counsel asked: "Did [Kimbley] pull a gun on you that night?" Defense counsel later explained that the purpose of this question was to impeach E.N.'s credibility. As a result of this line of questioning, the State asked the district court for permission to inquire further into E.N.'s memory of the gun on redirect examination. The district agreed and allowed the State to ask E.N. about instances in which he remembered Kimbley having a gun. The State eventually elicited testimony regarding how often Kimbley carried a gun, the details of the gun, and whether he had ever pulled the gun on E.N.

Kimbley contends that because his possession of a firearm was unconnected to his charged offenses, the evidence "was highly prejudicial and had absolutely no probative value or relevance" to the case at hand. Kimbely also argues that the evidence should have been excluded as impermissible character evidence under Idaho Rule of Evidence 404(b). The State responds that Kimbley's argument is barred by the invited error doctrine because Kimbley "opened the door" regarding his firearm possession by initially asking E.N. about it on cross-examination. The State also argues that evidence is not barred by Idaho Rule of Evidence 404(b) because "Kimbley did not elicit testimony from E.N. about his firearm for the purpose of showing that he acted in accordance with his character." Rather, the State contends that its questioning on redirect examination was for the purpose of rehabilitating E.N.'s credibility.

We conclude that the district court did not err in allowing the State to inquire on redirect concerning E.N.'s memory of Kimbley's possession of a firearm. While other-act evidence is

inadmissible to prove a person's character, "[t]his evidence may be admissible for another purpose[.]" I.R.E. 404(b). Specifically, this Court has recognized that other-act evidence may be admissible for the purpose of impeachment because it is "relevant to show something other than the defendant's character and propensity to commit the crime charged." *State v. Hairston*, 133 Idaho 496, 502, 988 P.2d 170, 1176 (1999) (internal citation omitted). Similarly, other-act evidence may also be admissible to rehabilitate a witness. Like impeachment, rehabilitation evidence speaks to a witness's credibility and, therefore, is generally not offered to prove the defendant's propensity to commit the charged crime. Thus, as a corollary to impeachment, other-act evidence offered for the purpose of rehabilitating a witness is generally admissible under Idaho Rule of Evidence 404(b)(2).

Here, although the State's questions regarding Kimbley's gun possession elicited evidence of another wrongful act by Kimbley, they were proper because they were posed for the purpose of rehabilitating E.N.'s credibility. The State's questions on redirect examination came after Kimbley's counsel had attempted to impeach E.N. Thus, Kimbley opened the door for the State to clarify E.N.'s memory of Kimbley's possession and use of a gun.

Moreover, even if the evidence of Kimbley's gun possession was unfairly prejudicial, as Kimbley suggests, he cannot now complain of the issue on appeal having invited the error in the district court. A party "may not successfully complain of errors one has consented to or acquiesced in." *State v. Caudill*, 109 Idaho 222, 226, 706 P.2d 456, 460 (1985) (declining to reverse conviction because erroneous statements were elicited by defense counsel). Here, it was Kimbley, and not the State, who first put his gun possession at issue, and this was a tactical decision by Kimbley's counsel to impeach the State's witness. Thus, it was a calculated decision by Kimbley to introduce potentially prejudicial evidence for the purpose of impeachment. As such, Kimbley assumed the risk of the evidence and cannot now complain if it was unfairly prejudicial. Accordingly, the district court did not err in admitting the evidence.

**E. Kimbley has failed to preserve his argument that the State committed prosecutorial misconduct.**

Kimbley's final argument is that the State committed prosecutorial misconduct by arguing during its closing that Johnson's testimony was not credible because she had invoked her Fifth Amendment right against self-incrimination. The incident occurred during the defense's case in chief when Kimbley called Johnson to testify. On cross-examination, the State asked Johnson if she had "assist[ed] Mr. Kimbley in fleeing prosecution[.]" Johnson replied, "I cannot talk about

that. It is an ongoing investigation." Johnson then invoked her "Fifth Amendment right[] against self-incrimination[,]" and the State ended its cross-examination. Later, during closing arguments, the State argued that because Johnson is the "long[-]time girlfriend of Mr. Kimbley's, she has bias. Worse than that, she exerted [sic] her rights to Fifth Amendment as is her constitutional right[] to self-incrimination." The State then argued that the jury should not give Johnson's testimony "any weight whatsoever."

Kimbley contends that these statements constitute prosecutorial misconduct because they were an improper attempt to discredit Johnson, a witness favorable to Kimbley. The State responds that Kimbley did not preserve this argument on appeal because he did not object to the State's comments in the district court. The State also contends that because Kimbley did not argue in his opening brief that the statements constituted a fundamental error, Kimbley cannot raise the argument for the first time in his reply brief. In reply, Kimbley concedes that he never objected to the statements made by the State during its closing argument. Kimbley contends, though, that he may still raise the issue on appeal because it constitutes fundamental error. Moreover, although Kimbley acknowledges that he did not use the words "fundamental error" in his opening brief, he argues that he still effectively raised the issue in his opening brief by characterizing the error as a "constitutional violation."

We agree with the State that Kimbley has failed to preserve this issue for appeal. As we have already noted, generally, "[t]his Court will not consider issues raised for the first time on appeal." *Garcia-Rodriguez*, 162 Idaho at 275, 396 P.3d at 704 (internal quotations marks and citation omitted). A defendant may only assert a claim of prosecutorial misconduct for the first time on appeal if the misconduct constituted fundamental error. *Perry*, 150 Idaho at 220, 245 P.3d at 972. However, "[t]his Court does not consider arguments raised for the first time in a reply brief." *Ingraham*, 172 Idaho at 36, 528 P.3d at 972. "[S]uch late arguments, which at best seem to be a legal afterthought and, at worst, appear calculated to prevent opposing counsel from offering a fair response, are generally not considered by the Court." *Id.*

Here, Kimbley concedes that he never objected to this issue before the district court. He also recognizes that he did not use the words "fundamental error" in his opening brief. At this point in our decision, it should be obvious that such admissions by Kimbley are fatal to his argument on appeal. We do not mean to suggest that in order to invoke the fundamental error doctrine a defendant must expressly label an error as "fundamental." But a defendant does not allege a

fundamental error merely by calling it a "constitutional violation" either. Rather, to properly argue that an alleged error that the defendant did not object to below is fundamental, a defendant must follow the standard this Court set forth in *Perry* and provide both legal authority and argument as to how that standard is satisfied. 150 Idaho at 228, 245 P.3d 980. The argument must also be included in the defendant's opening brief. Here, Kimbley did not present that argument in his opening brief. Moreover, even in his reply brief Kimbley has failed to present cogent argument and relevant authority to establish that the prosecutor's argument constituted fundamental error. Because Kimbley has failed to do those things that are required before this Court, he has failed to properly raise the issue of whether the State's comments during its closing argument constituted a fundamental error. As such, his argument is unpreserved on appeal, and we decline to consider it as a result.

We find it necessary to emphasize that our dismissal of Kimbley's allegation of prosecutorial misconduct is based entirely on issue preservation; we do not pass upon the merits of Kimbley's argument or condone the statements made by the prosecutor in his closing. However, as a general matter, we wish to clarify that we do not condone the impeachment of witnesses based on their invocation of a privilege against self-incrimination. Indeed, the relevant jury instruction, which should have been given in this case, is entitled "Self-Incrimination of Witness/Privilege" and directs the jury *not* to draw an adverse inference from the fact a witness has invoked her Fifth Amendment privilege. I.C.J.I. 316 ("The information being requested from this witness is privileged and may not be presented. That fact must not affect your opinion about the believability of the witness or the guilt or innocence of the defendant."). Moreover, courts that have addressed this issue have concluded it is improper for a prosecutor to impeach or otherwise discredit a witness for invoking her Fifth Amendment privilege against self-incrimination. *See, e.g.*, *United States v. Lizza Indus., Inc.*, 775 F.2d 492, 496 (2d Cir. 1985) ("A prosecutor who uses the fact that a witness has invoked his Fifth Amendment privilege against self-incrimination to discredit that witness or to prejudice the defendant commits trial error."). Nevertheless, we decline to resolve this issue on its merits because Kimbley failed to preserve it for appeal.

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

Chief Justice BEVAN and Justices BRODY, MOELLER and ZAHN CONCUR.

14