**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 52160**

| | |
|---|---|
| **STACI L. SOMES, fka STARNES,** | ) |
| | ) **Filed: July 15, 2025** |
| **Plaintiff-Respondent,** | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) |
| **NATHAN R. STARNES,** | ) |
| | ) |
| **Defendant-Appellant.** | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Cynthia Yee-Wallace, District Judge.

Judgment for breach of spousal support agreement, <u>affirmed</u>.

ELC Legal Services, Chtd.; Ryan B. Clay, Boise, for appellant. Ryan B. Clay argued.

Cosho Humphrey, LLP.; Mackenzie Whatcott, Boise, for respondent. Mackenzie Whatcott argued.

_____

LORELLO, Judge

Nathan R. Starnes appeals from the judgment concluding he breached a spousal support agreement. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

In January 2020, Starnes and Staci L. Somes (fka Starnes) divorced pursuant to a stipulated judgment and decree of divorce. The judgment and decree of divorce provided that the parties entered into a non-modifiable and separate contract related to spousal support. The spousal support agreement was signed and notarized by both parties. The spousal support agreement required Starnes to pay Somes $3,026 per month for a total of thirty-six months, beginning January 1, 2020, with payments due on the first of each month thereafter. The spousal support agreement also specified that payments would cease at the end of any month in which Somes died.

1

Somes remarried in 2021. Beginning in July 2021, Starnes stopped making support payments and made no further payments through the end of the agreement's thirty-six-month term, which concluded in December 2022. In total, Starnes missed eighteen months of payments, totaling $54,468. In December 2022, Somes filed a complaint alleging Starnes breached the spousal support agreement when he ceased making support payments. Somes also sought to recover the total amount of unpaid support payments in damages. Starnes responded by filing a motion for summary judgment, arguing his support obligation ended when Somes remarried. The district court denied Starnes' motion for summary judgment. Starnes filed a motion to reconsider, which the district court also denied.

A court trial was held at which both Starnes and Somes testified. In its findings of fact and conclusions of law, the district court determined that the spousal support agreement was a separate integrated agreement and unambiguous. The district court also found that Starnes breached the spousal support agreement when he ceased making payments following Somes' remarriage. As a result of Starnes' breach, the district court awarded Somes $54,468 in damages. Starnes appeals.

## II.

## STANDARD OF REVIEW

Where a trial court sits as a finder of fact without a jury the court is required to enter findings of fact and conclusions of law. I.R.C.P. 52(a); *Est. of Hull v. Williams*, 126 Idaho 437, 440, 885 P.2d 1153, 1156 (Ct. App. 1994). Our review of the trial court's decision is limited to ascertaining whether substantial, competent evidence supports the findings of fact, and whether the trial court correctly applied the law to the facts as found. *Borah v. McCandless*, 147 Idaho 73, 77, 205 P.3d 1209, 1213 (2009); *Cummings v. Cummings*, 115 Idaho 186, 188, 765 P.2d 697, 699 (Ct. App. 1988). Evidence is substantial and competent if a reasonable trier of fact would accept that evidence and rely on it to determine whether a disputed point of fact was proven. *Hull v. Giesler*, 156 Idaho 765, 772, 331 P.3d 507, 514 (2014); *Hutchison v. Anderson*, 130 Idaho 936, 940, 950 P.2d 1275, 1279 (Ct. App. 1997). Where there is conflicting evidence, it is the trial court's task to evaluate the credibility of witnesses and to weigh the evidence presented. *Desfosses v. Desfosses*, 120 Idaho 354, 357, 815 P.2d 1094, 1097 (Ct. App. 1991). We freely review the trial court's conclusions of law reached by applying the facts found to the applicable law. *Staggie v. Idaho Falls Consol. Hosps.*, 110 Idaho 349, 351, 715 P.2d 1019, 1021 (Ct. App. 1986).

2

## III.

## ANALYSIS

Starnes contends the district court erred in finding that he breached the terms of the spousal support agreement. According to Starnes, the district court erred "in not applying fundamental principles of contract law" and by "improperly" modifying the spousal support agreement "by reading in terms that did not exist." Starnes additionally argues that the spousal support agreement "is void for lack of meeting of the minds on a material term." In response, Somes argues Starnes' arguments "should be deemed waived" because he failed "to articulate or analyze the applicable standard of review on appeal." Somes also asserts the district court's findings of fact and conclusions of law are supported by substantial and competent evidence and the applicable law. Both parties request an award of costs and attorney fees on appeal. We hold that Starnes has failed to show that the evidence is insufficient to support the district court's judgment finding him in breach of the spousal support agreement.

A.      **Standard of Review**

As a preliminary matter, we will address Starnes' failure to identify the applicable standard of review or apply that standard in his opening brief. This Court has made clear that an appellant's brief must articulate the appropriate standard of review because an appellant must address the matters this Court considers when evaluating the appellant's claims of error. *State v. Byrum*, 167 Idaho 735, 739, 476 P.3d 402, 406 (Ct. App. 2020). Failure to articulate or provide analysis relating to the relevant standard of review makes the appellant's argument conclusory, which is fatally deficient to the appellant's case. *Id*. at 739-40, 476 P.3d at 406-07. Failure to include the correct standard of review on appeal results in a waiver of claims on appeal. *Id*. at 740, 476 P.3d at 407.

Starnes does not include a standard of review section in his opening brief, nor does he clearly articulate the applicable standard of review within the argument section of his brief. Instead, in discussing the issues presented, Starnes asserts that "the district court erred." This conclusory statement does not qualify as a standard of review.[1] As a result, Starnes has waived

---

[1]      Starnes' reply brief includes language regarding the standard of review. However, a party may not cure an earlier failure to articulate and apply the appropriate standard of review by citing it for the first time in a reply brief. *Cf. State v. Kimbley*, 173 Idaho 149, 160, 539 P.3d 969, 980

the issues on appeal.  Nonetheless, a review of the claims on their merits shows Starnes has failed to establish the district court erred.

**B.    Breach of Spousal Support Agreement**

The elements for a claim for breach of contract are:  (a) the existence of the contract; (b) the breach of the contract; (c) the breach caused damages; and (d) the amount of those damages. *Franklin Bldg. Supply Co., Inc. v. Hymas*, 157 Idaho 632, 637, 339 P.3d 357, 362 (2014).  A breach of contract occurs when there is a failure to perform a contractual duty.  *Shawver v. Huckleberry Ests., L.L.C.*, 140 Idaho 354, 361, 93 P.3d 685, 692 (2004); *Daniels v. Anderson*, 113 Idaho 838, 840, 748 P.2d 829, 831 (Ct. App. 1987).  The burden of proving the existence of a contract and its breach is on the plaintiff; once those facts are established, the defendant has the burden of pleading and proving affirmative defenses, which legally excuse performance.  *Idaho Power Co. v. Cogeneration, Inc.*, 134 Idaho 738, 747, 9 P.3d 1204, 1213 (2000).  A nonbreaching party may recover damages so long as the damages are incidental to the contract and caused by its breach. *Caldwell Land & Cattle, LLC v. Johnson Thermal Sys., Inc.*, 165 Idaho 787, 807, 452 P.3d 809, 829 (2019).

Starnes and Somes' underlying judgment and decree of divorce noted that the parties entered into a "non-modifiable separate contract related to support."  The separate support contract reads:

SPOUSAL SUPPORT AGREEMENT

This agreement is made and entered into this 21st day of January 2020, by or between Staci Starnes (hereinafter "Staci") and Nathan Starnes (hereinafter "Nathan").

RECITALS:

a.      The parties hereto on this date are stipulating to the entry of a Judgment dissolving their marriage.  This Agreement is the result of negotiation and is a separate integrated agreement between us and it will not be merged or incorporated in the Decree of Divorce to be entered.

b.      The parties have agreed that Nathan shall pay to Staci spousal support/alimony as set forth hereinafter.

For the reasons recited herein and in consideration of the mutual covenant contained herein, the parties agree as follows:

---

(2023) (holding that appellate courts do not consider arguments raised for the first time in a reply brief).

1.  PAYMENT OF SPOUSAL SUPPORT/ALIMONY: Nathan shall pay to Staci alimony/spousal support in the amount of $3,026.00 per month for a total of thirty-six (36) months commencing on January 1, 2020, and on the first day of each month thereafter. The payments will stop on the last day of any month in which Staci dies.

2.  MODIFICATION: Neither party shall have the right to request that any court modify the alimony/spousal support payments. This shall remain a separate contract and does not constitute a court order. Each of us accepts the risk of all (predictable and non-predictable) changed personal, medical, financial, or other circumstances now, after divorce, or upon death of the other and hereby waive any claim to spousal support arising from those risks, or any other risks, if and when they arise.

3.  ATTORNEY FEES: If action is required to enforce any of the provisions of this contract, the prevailing party in that action shall be entitled to an award of all attorney fees and costs.

Following trial, the district court determined that the terms of the spousal support agreement were plain and unambiguous and required Starnes to "pay Somes $3,026 per month for 36 months, beginning on January 1, 2020, and continuing each month thereafter." The district court found that Somes had proven both "the existence of the spousal support agreement" and that Starnes breached the agreement--namely "by failing to pay [Somes] the sum of $3,026 per month" and "continuing to pay such sum on the first day of each month thereafter, for 36 months." As evidentiary support, the district court relied on Somes' testimony at trial indicating that Starnes failed to pay her eighteen months of support payments. The district court therefore concluded that Starnes' breach caused Somes "damages in the amount of $54,468, *i.e.*, monthly payments in the amount of $3,026 for eighteen months that were not made." As a result, the district court awarded Somes "damages caused by the breach in the amount of $54,468."

On appeal, Starnes argues the district court erred in not applying "well-established contract principles requir[ing] incorporation of existing law." Starnes contends case law establishing that spousal support obligations terminate upon the recipient's remarriage applied to the spousal support agreement and, as such, he was no longer obligated to pay support after Somes remarried. Starnes' argument is not supported by the record or case law.

In *Greene v. Greene*, 102 Idaho 891, 897, 643 P.2d 1061, 1067 (1982), the Idaho Supreme Court held that spousal support obligations terminate upon the receiving spouse remarrying. However, this Court has also held that, while spousal support obligations arising from a divorce decree or court order terminate automatically upon the recipient's remarriage, the automatic

5

termination rule does not apply when the support obligation stems from a separate contract. *Simplot v. Simplot*, 109 Idaho 92, 93, 705 P.2d 1047, 1048 (Ct. App. 1985). In *Simplot*, the parties entered into a separate spousal support agreement in which the supporting spouse agreed to pay $2,000 per month in support for 121 months. The agreement specified that the obligation would terminate upon the receiving spouse's death. After the receiving spouse remarried, the supporting spouse sought to terminate his support obligation. This Court held that, because the "holding in *Greene* is not applicable to circumstances where the alimony obligation arises from contract," the effect of remarriage on the support obligation depended "upon a proper interpretation of the agreement." *Id.* We emphasized that "it would border on the absurd to speculate that remarriage of the [receiving spouse] was not considered when the agreement" was negotiated and executed. *Id* at 94, 705 P.2d at 1049. This Court held that the unambiguous agreement between the parties "listed only two alimony-terminating events: the expiration of 121 months; and the death of" the receiving spouse. *Id.* Because "neither one of those [terminating] events" had occurred, we held that the supporting spouse remained obligated to make the monthly support payments despite the receiving spouse's remarriage. *Id.*

The Idaho Supreme Court has also held that, when the parties entering into a separate agreement do not intend and specifically contract against the termination of spousal support upon the remarriage of the spouse receiving it, those support payments will continue despite remarriage. *See Keller v. Keller*, 130 Idaho 661, 665, 946 P.2d 623, 627 (1997) (holding that, "except as otherwise agreed by the parties in writing, the obligation of any party in any decree, judgment or order for the support and maintenance of the other party shall terminate upon the death of the obligor or upon the remarriage of the other party").

The spousal support agreement entered into by Starnes and Somes specifies that it was reached as a "result of negotiation and is a separate integrated agreement between" the parties that "will not be merged or incorporated into the decree of divorce." The second paragraph of the spousal support agreement further provides that "neither party shall have the right to request that any court modify the alimony/spousal support payments" and that the agreement "shall remain a separate contract and does not constitute a court order." Accordingly, the grounds for terminating spousal support are governed by the terms of the spousal support agreement. As noted by the district court, the parties' spousal support agreement "omitted any reference to remarriage,

evidencing that remarriage was not an intended term in the parties' agreement." As a result, the general rule that spousal support terminates upon the receiving spouse remarrying does not apply to the spousal support agreement in this case. *See Foster v. Schorr*, 139 Idaho 563, 566, 82 P.3d 845, 848 (2003) (holding that, when parties entering into a property settlement agreement do not intend, and specifically contract against, the termination of maintenance upon the receiving spouse remarrying, "those maintenance payments will continue on despite remarriage").

Starnes further asserts "Idaho law has consistently required explicit written provisions to override the default rule that support terminates upon the receiving party's remarriage." In support of his argument, Starnes cites the language from *Keller*, 130 Idaho at 665, 946 P.2d at 627, stating that, "except as otherwise agreed by the parties in writing, the obligation of any party in any decree, judgment or order for the support and maintenance of the other party shall terminate upon the death of the obligor or upon the remarriage of the other party." According to Starnes, "the parties were required to explicitly state any intention to apply a condition contrary to the automatic termination of the spousal support payments, which they did not do." Contrary to Starnes' argument, the parties in this case intended and agreed to set their own terms for terminating spousal support, as evidenced by the terms of their spousal support agreement. The record shows the district court reviewed the terms of the spousal support agreement and found two events which would terminate Starnes' support obligation: the thirty-six-month term or Somes' death. Because the parties entered into this separate, non-modifiable agreement, the language in the agreement provides the only bases for terminating Starnes' support obligation.

Starnes further asserts that, because the spousal support agreement does not contain "language expressly providing for payments to continue after remarriage," the district court "effectively rewrote the support agreement by reading in a continuation provision that appears nowhere in the document's text." Starnes' argument misconstrues the record and the district court's findings. The district court did not "read in" a provision extending Starnes' support obligation beyond Somes' remarriage. Instead, because the parties entered into a separate contract regarding spousal support, the district court relied on the spousal support agreement's plain language to interpret the grounds for terminating Starnes' support obligation. The district court's analysis is consistent with *Simplot*, 109 Idaho at 93, 705 P.2d at 1048, which states that whether a support obligation arising from a separate contract has terminated "is dependent upon a proper

7

interpretation of the agreement." We agree with the district court that "adding a provision into the parties' contract that would allow alimony payments to cease upon [Somes'] remarriage would be a modification that adds a term to the parties' agreement"--precisely what the agreement prohibits and what Starnes claims was error by the district court.

Starnes also contends the district court erred in relying on *Simplot*, 109 Idaho at 93, 705 P.2d at 1048, "to support a holding that automatic termination of spousal support does not apply to contracts." According to Starnes, the district court "failed to recognize and adhere to the supporting second half of the instruction in *Simplot*: 'whether the obligation has terminated in the instant case is dependent upon a proper interpretation of the agreement.'" Starnes argues that a proper interpretation of the agreement demonstrates that the second paragraph incorporates the idea that spousal support terminates upon a party's remarriage. However, Starnes has failed to argue or show the district court erred in interpreting the spousal support agreement. We will not presume error. Moreover, Starnes concedes that the spousal support agreement in this case is "a standalone contract between the parties, expressly removed from the divorce decree." Starnes has failed to show the district court erred in relying on *Simplot*.

Finally, Starnes argues the testimony at trial "conclusively establishes that the parties had fundamentally different understandings about whether support would continue after remarriage." Starnes asserts the record therefore "demonstrates that the parties never achieved a meeting of the minds on the material term of post-remarriage support," rendering the spousal support agreement void. Starnes' argument is unpersuasive. The district court determined that, despite not having a merger clause, "the parties nonetheless intended the contract to be an integrated and complete expression of their agreement regarding spousal support." In support of its finding, the district court emphasized the spousal support agreement's non-modification provision, which states: "neither party shall have the right to request that any court modify the alimony/spousal support payments." The district court also referenced the limiting language in the parties' judgment and decree of divorce providing that "the parties have entered into a non-modifiable separate contract related to support." Additionally, the district court stressed that, "most importantly, the parties expressly agreed when spousal support payments would stop: after 36 months or on the last day of any month in which [Somes] died." As noted by the district court, Starnes' beliefs that the spousal support agreement included an implied provision that payments would cease upon

8

remarriage, and that "other non-expressed termination events were included in the agreement, is legally incorrect." The district court correctly concluded that Starnes' "erroneous beliefs do not defeat a meeting of the minds on the material terms."

Substantial evidence supports the district court's conclusion that, based upon the parties' testimony and the language of both the spousal support agreement and the judgment and decree of divorce, "the parties intended the spousal support agreement to be an integrated and complete expression of their agreement regarding spousal support, and that there was a meeting of the minds as to the material terms of that agreement." Starnes has failed to show the district court erred when it found he breached the spousal support agreement.

C.      **Costs and Attorney Fees on Appeal**

On appeal, Somes requests an award of costs and attorney fees, contending she is entitled to reimbursement pursuant to I.C. §§ 12-121 and 12-107, paragraph three of the spousal support agreement, and I.A.R. 35 and 41. Paragraph three of the spousal support agreement provides: "If action is required to enforce any of the provisions of this contract, the prevailing party in that action shall be entitled to an award of all" costs and attorney fees. As the "prevailing party" on appeal, Somes is entitled to reasonable costs and attorney fees as provided in the spousal support agreement. Therefore, we need not address whether Somes would also be entitled to costs and attorney fees under I.C. § 12-121 and I.A.R. 41.

Starnes also requests an award of costs and attorney fees on appeal pursuant to the terms of the spousal support agreement and I.A.R. 40 and 41. Because Starnes is not the prevailing party, he is not entitled to an award of costs or attorney fees on appeal.

### IV.

### CONCLUSION

Substantial evidence, and the applicable law, supports the district court's finding that Starnes breached the spousal support agreement and its award of $54,468 in damages to Somes as a result of that breach. Accordingly, the district court's judgment for breach of the spousal support agreement is affirmed. Costs and attorney fees on appeal are awarded to Somes as the prevailing party.

Judge HUSKEY and Judge TRIBE, **CONCUR**.